UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

      Plaintiff,

-vs-

OJ COMMERCE, LLC,

      Defendant.
_____/

**DEFENDANT OJ COMMERCE, LLC'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND
COUNTERCLAIMS AGAINST NATIONAL CHRISTMAS PRODUCTS, INC.**

Defendant OJ Commerce, LLC ("OJC"), by and through the undersigned counsel, hereby respectfully files this Answer and Affirmative Defenses to Plaintiff's Complaint.

## **ANSWER**

OJC denies each and every allegation contained in Plaintiff's Complaint that is not specifically admitted in this Answer. Subject to the foregoing, OJC hereby Answers Plaintiff's Complaint as follows:

1. Denied.

2. OJC is without knowledge or information sufficient to form a belief as to the truth of the averment in paragraph 2, and therefore denies the same.

3. Admitted.

4. Denied.

5. Denied.

6. OJC is without knowledge or information sufficient to form a belief as to the truth of the averment in paragraph 6, and therefore denies the same.

7. OJC admits that it is a limited liability company and has its principal place of business at 3076 North Commerce Parkway, Miramar, FL 33025. OJC denies the remaining allegations in paragraph 7 of Plaintiff's Complaint.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. OJC admits that Section 2.7 of the Agreement states:

Invoicing and Payments: Vendor shall generate a consolidated invoice for all services, including any applicable shipping and administrative fees. One complete copy of the invoice with a statement of activity for the prior period will be submitted either: (i) via email weekly or monthly to OJCommerce LLC's corporate office to accounting@ojcommerce.com; or (ii) via prearranged electronic transmission (EDI, FTP, etc). OJCommerce is paperless and no mailed invoice correspondence will be processed when mailed to the corporate office. All invoices must include, at a minimum, the following information: (i) Name and address of Vendor; (ii) Invoice number; (iii) OJCommerce Purchase Order Number; (iv) Description of Services or Products to OJCommerce, LLC; (v) Date; and (vi) Dollar amount due. OJCommerce agrees to provide remittance detailing the invoices to be paid for the week or month. OJCommerce agrees to pay Vendor for Services rendered in the amounts set forth after the receipt of a correct invoice from Vendor. OJCommerce will pay all undisputed invoice amounts within 30 days of invoice date.

13. *See* OJC's answer to paragraph 12 of Plaintiff's Complaint.

14. OJC admits that Section 2.7.2 of the Agreement states:

Any disputed invoice amounts will be documented in writing and forwarded to Vendor within 30 days of invoice receipt. Within 30 days of Vendor's receipt of documentation of disputed amounts, Vendor will have responded to OJCommerce's claim. Upon resolution of disputed items in favor of Vendor, payment will be remitted within 10 days. If the resolution of disputed items is in favor of OJCommerce and not contested, no further action is required.

15. Denied.

16. Denied.

17. OJC is without knowledge or information sufficient to form a belief as to the truth of the averment in paragraph 17, and therefore denies the same.

18. Denied.

19. Denied.

20. Denied.

21. Admitted that Plaintiff sent the letter described in paragraph 21 and attached Ex. 2 to Plaintiff's Complaint. OJC denies that the contents of the letter are accurate or that Plaintiff is entitled to any relief related thereto.

22. Denied.

23. Denied.

24. OJC repeats and realleges its answers in paragraph 1-23 of its Answer.

25. Admitted.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. OJC repeats and realleges its answers in paragraph 1-23 of its Answer.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. OJC denies that Plaintiff is entitled to any of the remedies Plaintiff seeks in its Prayers for Relief.

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred in whole or in part because it fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred in whole or in part because of accord and satisfaction.

3. Plaintiff's claims are barred in whole or in part because estoppel.

4. Plaintiff's claims are barred in whole or in part because of failure of consideration.

5. Plaintiff's claims are barred in whole or in part due to payment and release.

6. Plaintiff's claims are barred in whole or in part due to waiver.

7. Plaintiff's claims are barred in whole or in part by Plaintiff's prior breach of contract.

8. Plaintiff's claims are barred in whole or in part by Plaintiff's failure to its damages, if any.

9. Plaintiff's claims are barred in whole or in part by Plaintiff's unclean hands.

10. Plaintiff's claims are barred in whole or in part by Plaintiff's negligence.

11. Plaintiff's claims are barred in whole or in part by Plaintiff's fraud, as further described in OJC's Counterclaims.

12. Plaintiff's claims are barred in whole or in part by the doctrine of laches.

13. OJC's alleged acts or omissions were not the direct and/or proximate cause of Plaintiff's damages.

14. Any damages that Plaintiff allegedly suffered were directly or proximately caused by unforeseeable, independent, intervening, and/or superseding acts beyond the control of and unrelated to any alleged actions or omissions by OJC, including but not limited to the actions and omissions of Plaintiff.

15. OJC reserves the right to assert additional defenses based on information learned during discovery.

## OJC'S COUNTERCLAIMS AGAINST PLAINTIFF NATIONAL CHRISTMAS PRODUCTS, INC.

OJ Commerce, LLC ("OJC"), by and through undersigned counsel, hereby brings these counterclaims against Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("National Tree"), and states and alleges the following:

### PARTIES

1. OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and is selling consumer goods to customers.

2. Upon information and belief, National Tree is an S corporation organized under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.

### JURISDICTION

3. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4. This Court also has supplemental jurisdiction over these counterclaims, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the alleged claims in Plaintiff's Complaint.

## FACTS COMMON TO ALL COUNTS

5. On August 15, 2017, National Tree and OJC executed the sole agreement between the parties, an E-Commerce Vendor Agreement ("Agreement"), which governed their e-commerce business relationship. A true and correct copy of the Agreement is attached to this Counterclaim as **Exhibit A** and is incorporated herein.

6. National Tree primarily sells Christmas tree products that are very seasonal and are extremely time sensitive to the Christmas holiday.

7. The nature of the relationship between National Tree and OJC was for Christmas tree product orders to be drop shipped. That means that OJC sells National Tree Christmas tree products to its customers, and National Tree was to fulfill those orders by directly shipping the products to OJC's customers.

8. The Agreement defined "Drop Shipment" "as the process of Seller sending individual purchase orders to the [National Tree], and the [National Tree] shipping the purchase order merchandise from a [National Tree's] facility direct to an End Consumer, without passing through the warehouse of [OJC]"

9. In their relationship, National Tree had manufactured, stocked, and shipped the Christmas tree products for sale to OJC's customers.

10. In turn, OJC relied on National Tree to accurately and honestly account for how many Christmas tree products National Tree had in stock, when the products were shipped, and the tracking information related to National Tree's shipments.

11.     Tracking numbers are assigned by shipping carriers, such as FedEx, when a shipper, like National Tree, creates a shipping label or shipping note.  They allow the intended recipient of the package to track the status and progress of the shipment, and delivery of their order.

12.     The vast majority of Christmas tree product consumer sales for any given year take place in a 4–6-week period before Christmas, from around early-mid November through early-mid-December.

13.     This small window of time for Christmas tree product sales is the norm every year, and is based on consumer's seasonal shopping patterns, wherein the great majority of consumers purchase Christmas tree products soon before Christmas.

14.     It is critical to satisfying the customers who order Christmas tree products to ship and deliver them in a timely manner, as Christmas trees are almost always the central decoration for households that celebrate Christmas.

15.     Therefore, if a company does not deliver a customer's orders for Christmas tree products in the window of time they are needed by the customer, there is no making up for it after the fact.

16.     In other words, delivering a Christmas tree after Christmas, or not in the time frame promised, creates an extremely adverse effect on the customer because the customer's Christmas celebration has been negatively affected.

17.     This in turn creates an extremely adverse effect on the company selling the Christmas trees, as the customers take their frustration and disappointment out on the company selling the Christmas trees.

18.     Furthermore, because of the time-sensitive nature of the purchase by the customer, the failure to deliver a Christmas tree product as promised will more often than not have an adverse

effect on other sales the company would have made because the customer will now not trust the seller of the Christmas tree product for any of their other purchases, and will often post negative feedback on the Internet for other customers to review and consider when making their purchasing decisions, and will tell friends and family about their bad experience.

19. OJC worked with National Tree prior to the 2020 Christmas holiday season to prepare for the expected sales, so that all transactions would go smoothly and timely for OJC's customers.

20. OJC's time and effort was devoted to promoting National Tree's Christmas tree products, creating and optimizing images, advertisements, marketing material, and content for OJC's website and on third-party marketplaces, integrating its computer systems, and otherwise preparing for the holiday sales season (collectively, "setting up" the National Tree products).

21. During those preparations, National Tree made promises to OJC that National Tree could meet the demand of OJC's customers, would ship the products promptly, and have the Christmas tree products delivered in a timely fashion.

22. Reasonably relying on National Tree's promises, and in order to make sure that the sales and deliveries would go as successfully and smoothly as possible, for many months prior to the 2020 Christmas shopping season, OJC spent a significant amount of time and money setting up the National Tree Christmas tree products.

23. OJC also set up National Tree products to be sold on a variety of third-party marketplaces, such as Amazon and Walmart.

24. As a result of its preparation and investments, OJC was successful in selling a large number of National Tree Christmas tree products for the 2020 Christmas season on its website, and other marketplaces.

25. Unbeknownst to OJC, however, National Tree, for its part, was extremely negligent, reckless, and fraudulent when it came to processing the orders made by OJC's customers.

26. Beginning in November 2020, National Tree notified OJC that it had shipped a large number of orders and provided OJC with shipment tracking numbers for those orders.

27. In turn, OJC provided those tracking numbers to its customers advising them that their orders were shipped.

28. Although OJC did not know it at the time that it supplied the tracking information to its customers, the shipment information and tracking numbers provided by National Tree was misleading and dishonest.

29. National Tree had simply generated tracking numbers, but never actually shipped the orders and when customers tried tracking their orders on the shipping carrier websites, the shipping carrier showed no movement on those tracking numbers, as those packages were not actually shipped by National Tree. These tracking numbers that were generated but did not result in a shipment are herein referred to as "non-moving tracking numbers."

30. Indeed, National Tree did not even have the Christmas tree products in stock while it was telling OJC and its customers that National Tree's Christmas tree products were in fact in stock and ready to ship.

31. Fairly early in the Christmas ordering season, on November 17, 2020, OJC notified National Tree that 724 orders were late, with 311 having non-moving tracking numbers and another 431 well past their delivery due dates. A true and correct copy of the November 17, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit B** and is incorporated herein.

32. Approximately a week later, on November 25, 2020, OJC had determined that National Tree now had issued at least 468 non-moving tracking numbers.

33. On December 11, 2020 – extremely close to the Christmas holiday – OJC informed National Tree that **2,863** orders, upwards of four weeks old, had non-moving tracking numbers. A true and correct copy of the December 11, 2020 from OJC to National Tree is attached to this Counterclaim as **Exhibit C** and is incorporated herein.

34. In response, National Tree claimed that orders were picked up by the carrier, but National Tree was unable to provide pickup location details for OJC's confirmation.

35. Due to National Tree's failure to promptly ship OJC's customers' orders, many Christmas tree products were not delivered until either right before – after a customer had already made a substitute purchase due to the lateness of the shipment – or even after Christmas.

36. Also due to National Tree's failure to promptly ship OJC's customers' orders, many OJC customers canceled their orders, but National Tree later shipped the orders anyway, which resulted in OJC being charged for the product by National Tree and shipping fees when OJC had already refunded its customer's money.

37. National Tree's failures caused OJC's customers to file numerous chargeback claims with their credit card companies (wherein the customer seeks a refund or cancellation of a credit card charge due to a problem with an order), refund requests, and other economic losses.

38. National Tree's providing misleading tracking numbers, defective products, and late shipments, and shipping of already canceled orders, continued throughout and even after the Christmas holiday season.

39. Due to National Tree's ever-increasing orders with non-moving tracking numbers, defective trees, and late shipments, and those that were canceled altogether, OJC was overwhelmed

with calls and messages from angry customers, cancellations, and a large number of negative reviews posted all over the world wide web where millions of potential OJC customers can review and use them to make decisions about whether to order from OJC in the first place.

    40.    Listed below are just five of the numerous negative reviews that OJC's customers posted online as a result of National Tree's failure to promptly ship OJC's customers' Christmas tree orders and/or shipping defective trees:

    A. DO NOT ORDER FROM THEM! My order 'shipped' on the 9th and I never received. Apparently it was never even in stock and I only found out cause I called after it was suppose to arrive and they said it was out of stock and didn't even care. Talk about The Grinch.

    B. They cancelled my order the day before it should have arrived, this ruined my Christmas. Too late to make other arrangements for a tree. I will never buy from this company.

    C. Do not order from this company. We ordered a Christmas tree ON THE 6th. The seller said it shipped on the 7th and then when we contacted them about the order (10 days later) they blamed FedEx for not picking up the order. The package was still sitting in their warehouse in California. I will never order from this seller, and will from now on be looking at all 3rd party reviews before buying.

    D. Order placed 12/1. Should've suspected something was amiss because there was never a valid tracking number. Originally, it was supposed to arrive between 12/8-11. Then I was told between 12/12-17. Today, 12/18, I receive an email stating my order was credited back to my CC. Thats all fine & dandy but my new gate looks pretty stupid w/garland & no wreath. I will never buy from this vendor.

    E. I waited for the arrival of the Christmas tree. I ordered the tree in advance so I would have it the first of December. I received it today and imagine my disappointment when some the electrical connectors are missing. Now, I have to wait for your response to approve return and then order another tree and wait again. My husband just died and this Christmas is important to me. Please help!

41. Throughout the Christmas shopping season, OJC repeatedly advised National Tree that these cancellations, late shipments, defective shipments, and mis-shipments, will cause significant economic damages to OJC.

42. National Tree's wrongful conduct described above did in fact cause significant economic damages to OJC, including but not limited to money spent or lost on refunds, appeasements, additional customer service personnel hours, and loss of money spent on marketing, as OJC's customers were extremely upset, felt mistreated, and took their frustrations out on OJC.

43. National Tree's wrongful conduct described above also caused the loss of sales of other products that OJC did not receive or otherwise lost due to its customers' negative experiences with the National Tree Christmas tree products being taken out on OJC.

44. National Tree's wrongful actions, which caused extreme backlash by OJC's customers against OJC – who was not the source of the problems – also caused significant economic harm to OJC's reputation and goodwill.

**Count I - Breach of Contract**

45. OJC incorporates by reference paragraphs 1 through 44.

46. OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

47. Pursuant to the Agreement, OJC, as reseller, would promote and display National Tree's approved products for sale on OJC's website and third-party marketplaces, and National Tree, as vendor, would supply the products to OJC's customers.

48. Pursuant to Section 2.4.3 of the Agreement, "[a] Defective Return is the responsibility of [National Tree]."

49. The parties' course of dealing was that they operated under Section 2.4.3 of the Agreement, not Section 2.4.4.

50. Pursuant to Section 2.4.5 of the Agreement, a "Mis-shipped Product" was the responsibility of National Tree.

51. Pursuant to Section 2.6 of the Agreement, "[National Tree] accepts returns for cancelled orders that were shipped in error and not stopped by [National Tree], and [National Tree] pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4."

52. Pursuant to Section 2.7.4 of the Agreement, OJC transmitted purchase orders ("POs") to National Tree.

53. Those POs contained OJC's customer name, and their address, product choice and quantity, and ship date, among other information.

54. National Tree was obligated to ship each of OJC's customer's orders by the ship date listed in the PO.

55. National Tree breached the Agreement, including but not limited to at least Sections 2.4, 2.4.3, 2.4.5, 2.6, and 2.7.4 of the Agreement, by National Tree's improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipements.

56. As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages.

**Count II - Breach of Implied Covenant of Good Faith and Fair Dealing**

57. OJC incorporates by reference paragraphs 1 through 56.

58. OJC entered into a valid and enforceable Agreement with National Tree for the proper and timely fulfillment of dropship orders to OJC's customers.

59. Pursuant to Section 2.7.4 of the Agreement, OJC transmitted POs to National Tree.

60. Those POs contained OJC's customer name, and their address, product choice and quantity, and ship date, among other information.

61. National Tree was obligated to ship each of OJC's customer's orders by the ship date listed in the PO.

62. Implied in the parties' Agreement was National Tree's promise to ship OJC's customers' orders in a timely fashion, not to supply misleading non-moving tracking numbers to OJC and its customers, and not to ship already-canceled orders.

63. National Tree through its conscious reckless and deliberate actions failed to ship in a timely manner orders placed by OJC pursuant to the process outlined in Section 2.7.4 and the POs referenced therein.

64. National Tree's conduct deprived OJC from the benefit of the Agreement, as OJC suffered cancellations, negative feedback, chargebacks, refund demands, and other negative effects as outlined above due to National Tree's failure to properly and timely fulfill OJC's customer orders.

65. As a result of National Tree's breaches, OJC suffered hundreds of thousands of dollars in damages.

### Count III - Breach of Implied Warranty

66. OJC incorporates by reference paragraphs 1 through 44.

67. National Tree is a merchant with respect to goods of the kind involved in the instant matter, namely consumer goods, including but not limited to Christmas tree products.

68. National Tree sold goods to OJC and its consumers to be used for their ordinary purpose.

69. National Tree's goods and shipments thereof were therefore subject to an implied warranty.

70. On many occasions, National Tree delivered defective merchandise that failed to pass without objection in the trade of consumer goods, by the shipping carriers, breaching the implied warranty outlined in § 672.314, Fla. Stat.

71. On many occasions, National Tree also breached the implied warranty by failing to properly contain, package, and label the products as requested resulting in defective shipments.

72. As a result of National Tree's breach of implied warranty, OJC suffered hundreds of thousands of dollars in damages.

## Count IV - Tortious Interference with Business Relationship

73. OJC incorporates by reference paragraphs 1 through 44.

74. OJC had established business relationships with its customers that purchased National Tree products.

75. OJC also had established business relationships with third-party marketplaces, including Amazon and Walmart.

76. National Tree knew of OJC's business relationships, as OJC repeatedly advised National Tree that its reckless actions will affect OJC's relationships with its customers and with its third-party marketplaces.

77. National Tree recklessly, intentionally, and unjustly interfered with OJC's business relationship with its customers and with its third-party marketplaces, by National Tree issuing misleading tracking numbers and false promises about shipments, and causing improper cancellations, late shipments, defective shipments, and mis-shipments.

78. As a direct result of National Tree's wrongful conduct, which led to breaches of and harm to OJC's relationships, OJC suffered hundreds of thousands of dollars in damages.

79. As detailed above, National Tree willfully and wantonly interfered with OJC's business relationships with its customers and third-party marketplaces when National Tree issued misleading tracking numbers and made false promises about shipments. National Tree knew that there was a high likelihood that OJC would be injured and damaged by the misleading tracking numbers and false statements that interfered with OJC's business relationships. National Tree's conduct was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple OJC's damages against National Tree for its willful tortious interference.

## Count V - Fraud

80. OJC incorporates by reference paragraphs 1 through 44.

81. National Tree knowingly and intentionally, or with reckless disregard, made false statements to OJC about its ability to timely ship products during the Christmas holiday season, with the intent to induce OJC to sell National Tree products.

82. National Tree made its knowingly false statements with the intent to induce OJC to sell National Tree products during the 2020 Christmas season.

83. For example, on August 5, 2019, Steve Downs, a representative from National Tree, sent an email message to OJC promising that for the upcoming season there would be no out-of-stock problems for National Tree's Christmas tree products.

84. National Tree's representation was material to OJC's decision to market and sell National Tree's Christmas tree products during the 2020 Christmas holiday season.

85. OJC reasonably relied on these statements to market, promote and sell to its customers National Tree products.

86. National Tree also knowingly and intentionally made false statements to OJC about the status of its orders, by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

87. National Tree made its knowingly false statements with the intent to induce OJC to continue selling National Tree products during the 2020 Christmas season.

88. For example, on November 27, 2020, Mark Gardner, a representative from OJC, sent a message to Steve Downs of National Tree asking about the status of 432 orders that OJC received tracking numbers, but were showing no movement for more than seven days.

89. In response, Steve Downs of National Tree stated that all these 432 tracking numbers were picked up by the shipping carrier, and they were picked up by the shipping carrier.

90. National Tree's representation was material to OJC continuing to sell National Tree's Christmas tree products.

91. However, unknown to OJC at the time, National Tree's statement and assurances were knowingly false.

92. At the time the tracking numbers were provided by National Tree, OJC reasonably relied on National Tree's statements of fact to advise its customers and other third party marketplaces, that these 432 orders were shipped, and that they would be delivered prior to Christmas.

93. Later, however, OJC discovered that no containers were picked up from National Tree with the 432 packages intended for OJC's customers.

94. As a result of National Tree's fraudulent conduct, OJC suffered hundreds of thousands of dollars in damages.

95. As detailed above, National Tree made knowingly false representations to OJC about its ability to meet the demands and promptly ship OJC's customers' orders, and about National Tree's misleading, non-moving tracking numbers. National Tree knew that there was a high likelihood that OJC would be injured by National Tree's false statements. National Tree's fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded and intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple OJC's damages against National Tree for its fraud against OJC.

### Count VI - Florida Deceptive and Unfair Trade Practices Act ("FDUPTA")

96. OJC incorporates by reference paragraphs 1 through 44.

97. This action arises out of a violation of §501.204(1), Florida Statutes, prohibiting unfair and deceptive trade practices.

98. National Tree committed an unfair and deceptive trade practice while conducting commerce, by knowingly and intentionally making false statements to OJC about ts ability to ship products timely during the Christmas holiday season, and by providing tracking numbers and representing to OJC that orders were shipped, when in fact those tracking numbers showed no movement, and those orders were not shipped.

99. Such a dishonest act is unconscionable, deceptive, unfair, and violates established public policy of fair dealings.

100. OJC suffered hundreds of thousands of dollars in damages as result of National Tree's violations of FDUPTA.

101. As a result of National Tree's wrongful conduct, OJC seeks its damages, cost of this litigation including attorney's fees, as provided in § 501.211(1), Fla. Stat., prejudgment and post-judgment interest, and any other relief this Court finds just and proper.

### OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

### PRAYER FOR RELIEF

WHEREFORE, OJC respectfully demands the following relief:

a.  Judgment against National Tree on all of its claims;

b.  Judgment in favor of OJC on all its affirmative defenses to National Tree's claims;

c.  Judgment against National Tree on all of OJC's counterclaims;

d.  Judgment against National Tree for damages in the amount to be determined at trial;

e.  Judgment against National Tree for punitive damages in an amount to be determined at trial, but at least triple OJC's damages against National Tree for its fraud and tortious interference against OJC;

f.  Award of OJC's attorneys' fees and costs, pursuant to § 501.211(1), Fla. Stat.;

g.  OJC's costs incurred in obtaining judgment against National Tree; and

h.  Such other relief as the Court considers just and proper.

Dated: September 20, 2022.

Respectfully Submitted,
Shlomo Y. Hecht, P.A.
4538 NW 85th Ave.
Coral Springs, FL 33065
Phone: 954-861-0025

By: /s/ <u>Shlomo Y Hecht</u><br>
Florida State Bar No.: 127144<br>
Email: sam@hechtlawpa.com<br>
*Attorney for OJ Commerce, LLC*

## **CERTIFICATE OF TRANSMITTAL / SERVICE**

I HEREBY certify that on September 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and served this document upon Plaintiff's counsel of record.

/s/Shlomo Y. Hecht<br>
Shlomo Y. Hecht