UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. d/b/a NATIONAL TREE COMPANY,

       Plaintiff,
v.

OJ COMMERCE, LLC,

       Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM

THIS CAUSE is before the Court upon Plaintiff/Counter-Defendant National Christmas Products, Inc. d/b/a National Tree Company ("Plaintiff" or "National Tree")'s Motion to Dismiss Counterclaim [DE 38], filed herein on November 21, 2022. The Court has carefully considered the Motion [DE 38], Defendant/Counter-Plaintiff OJ Commerce, LLC ("Defendant" or "OJC")'s Response in Opposition [DE 40], Plaintiff's Reply [DE 42], and is otherwise fully advised in the premises.

### I. BACKGROUND[1]

This action arises out OJC's alleged failure to remit payment for approximately $781,474.14 worth of items delivered by National Tree between December 2020 and October 2021. *See* [DE 1]. On May 12, 2022, National Tree filed a Complaint asserting three claims against OJC: Count I for Breach of Contract; Count II for Account Stated; and Count III for

---

[1] The factual background of this case is recited at length in the Court's August 23, 2022 Order on Defendant's Motion to Dismiss. *See* [DE 21]. The Court assumes the reader's familiarity with that Order.

1

Goods Sold and Delivered. *See* [DE 1]. On September 6, 2022, following this Court's dismissal without prejudice of Count III, *see* [DE 21], National Tree provided notice that it is proceeding only as to Count I and Count II, *see* [DE 22].

On September 20, 2022, OJC filed a six-count Counterclaim against National Tree, alleging claims for: Breach of Contract (Count I); Breach of Implied Covenant of Good Faith and Fair Dealing (Count II); Breach of Implied Warranty (Count III); Tortious Interference with Business Relationship (Count IV); Fraud (Count V); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI). *See* [DE 24]. National Tree then filed the instant Motion to Dismiss, alleging that each of OJC's claims fails to state a claim for relief. For the reasons stated herein, the Motion is granted as to Counts I, II, IV, and VI, but denied as to Counts III and V.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)). However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

"A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (*quoting St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). However, a court may consider documents attached to a complaint when ruling on a motion to dismiss. *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (stating that "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal district court in ruling on a motion to dismiss"). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see also Celestine v. Capital One*, 741 F. App'x 712, 713 (11th Cir. 2018) ("Where exhibits are submitted that contradict the alleged facts, the exhibits control, despite our construction of facts in favor of their truth.").

### III. DISCUSSION

National Tree moves to dismiss Counts I through VI of OJC's Counterclaim. The Court will address each count, in turn.

#### A. Breach of Contract (Count I)

Count I of the Counterclaim alleges a claim for Breach of Contract against National Tree pursuant to the E-Commerce Vendor Agreement ("Agreement") at the center of this dispute. According to the Counterclaim, National Tree breached Sections 2.4, 2.4.3, 2.4.5, 2.6, and 2.7.4 of the Agreement due to "improper cancellations, late shipments, defective shipments, shipping products after they were cancelled, and mis-shipments," resulting in "hundreds of thousands of dollars in damages" to OJC. [DE 24] at ¶¶ 55–56. National Tree argues that none of these alleged

actions amounts to a breach of the Agreement. Rather, according to National Tree, the plain terms of the Agreement shows that these alleged occurrences are merely potential events contemplated by the Agreement.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted). "The construction of a contract is a question of law for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible of only one interpretation." *Gray v. D & J Indus., Inc.*, 875 So. 2d 683, 683 (Fla. 3d DCA 2004) (citations omitted).

Here, upon careful review of the parties' arguments and the relevant terms of the Agreement, which OJC attached to its Counterclaim, the Court agrees with National Tree that the mere occurrence of "improper cancellations, late shipments, defective shipments, shipping products after they were canceled, and mis-shipments" do not constitute material breaches of the Agreement under the plain and unambiguous terms of the provisions cited by OJC.

First, Section 2.4.3 of the Agreement states, in relevant part:

> **Damage Returns and Defective Returns**: . . . A Damage Return is the responsibility of [National Tree] if the item: (i) ships via [National Tree]'s Carrier, or (ii) ships via [OJC]'s Carrier in packaging that is not certified by FedEx or UPS as sufficient. . . . A Damage Return due to insufficient packaging by [National Tree] is considered a Defective Return. A Defective Return is the responsibility of [National Tree]. The decision to donate, issuing a carrier call tag for pickup return label to return ship, sending parts or a full replacement, Warranty claims, field destroying the defective product is the responsibility of [National Tree]. Notification for resolution is from [National Tree] via [OJC]'s web portal support ticket interface.

[DE 24-1] at p. 4, § 2.4.3. The Court agrees with National Tree that the express terms of Section 2.4.3 establish that National Tree is responsible for the return of defective products, not that the shipping of defective products is itself a breach of the Agreement. Although OJC alleges that there were defective shipments, *see* [DE 24] at ¶ 55, OJC does not allege any conduct that would amount to a breach of Section 2.4.3. OJC does not allege, for example, that National Tree did not take responsibility for any defective return, or that National Tree instead made it OJC's responsibility to handle a defective return.

So too for Section 2.4.5, which states:

> **Allowances**: If applicable, [OJC] shall deduct the appropriate percentage from each invoice upon payment. Mis-shipped Product is the responsibility of [National Tree] and is not applicable to the allowance. A quarterly review of allowances and remorse/damaged/defective product rates will determine if the allowance(s) should be adjusted to actual rate experienced.

[DE 24-1] at p. 4, § 2.4.5. Once again, Section 2.4.5, "if applicable,"[2] provides that a mis-shipped product is the responsibility of National Tree, not that a mis-shipment itself amounts to a breach of the Agreement.

Likewise, the Court agrees with National Tree that Count I of OJC's Counterclaim is inconsistent with the plain language of Section 2.6 of the Agreement, which establishes the procedure for when a cancelled product is shipped in error:

> **Confirmed Cancels and Shipped**: [National Tree] confirms cancellation of order by [OJC] Web Portal or via email. [National Tree] accepts returns for cancelled orders that were shipped in error and not stopped by [National Tree], and [National Tree] pays for the freight charges, intercept fees and any return freight charges for shipping the cancelled order pursuant to the terms in section 2.4.

---

[2] As National Tree points out, OJC confusingly alleges in its Counterclaim that the parties "operated under Section 2.4.3 of the Agreement, not Section 2.4.4." [DE 24] at ¶ 49. Section 2.4.4 provides a damage returns and defective returns allowance to OJC "[i]n the event [National Tree] does not agree to section 2.4.3[.]" [DE 24-1] at p. 4, § 2.4.4.

5

[DE 24-1] at p. 4, § 2.6. OJC alleges National Tree breached Section 2.6 by "shipping products after they were cancelled," *see* [DE 24] at ¶ 55, yet nothing in Section 2.6 indicates that merely shipping products after they were cancelled amounts to a breach of the Agreement.

OJC also alleges that National Tree breached Section 2.7.4 of the Agreement, which states:

> OJC will only be liable for payment of the dollar amount transmitted on the PO if the PO is shipped by [National Tree]. In the event [National Tree] believes the dollar amount on the PO is incorrect, [National Tree] must request and receiving approval in writing from [OJC] to ship and invoice the order at a greater amount before shipping the PO.

[DE 24-1] at p. 5, § 2.7.4. But OJC does not allege *how* National Tree breached Section 2.7.4. For example, OJC does not allege that National Tree failed to request and receive approval in writing from OJC to ship and invoice any order at a greater amount than is included on a purchase order.

In its response, OJC argues that it "alleges that National Tree breached the Agreement by shipping canceled orders, defective shipments, and later shipments, **and not refunding OJC for those shipments**." [DE 40] at 3 (emphasis added); *see also id.* at p. 3 n.1 ("[T]he Agreement also contemplated that in such events it would be the fault of National Tree, and it should refund OJC for those orders, but National Tree did not refund."). But nowhere in Count I does OJC clearly allege that it paid for any cancelled, defective, or late shipment, let alone that National Tree breached the Agreement by failing to refund OJC for any amounts it paid.

Finally, National Tree argues that Count I alleges that "National Tree was obligated to ship each of OJC's customer's orders by the ship date listed in the PO," [DE 24] at ¶ 54, but never identifies any provision of the Agreement that contemplates a failure to ship orders by the date contained in a purchase order. Indeed, the only provision of the Agreement cited by OJC

states that "[OJC] will only be liable for payment of the dollar amount transmitted on the PO if the PO is shipped by Vendor." [DE 24-1] at p. 5. OJC, however, presents no argument in response to the Motion explaining how this language—or any language in the Agreement—obligates National Tree to ship items by the ship date listed in its purchase orders. Instead, OJC argues that National Tree did not ship items to OJC's customers within a reasonable time—an allegation that appears nowhere in OJC's Counterclaim. To the extent that OJC wishes to change its theory of breach of contract regarding late shipments to claim that National Tree did not ship items within a reasonable period of time, OJC must re-plead Count I to allege as such.

Accordingly, because none of what OJC has alleged in its Counterclaim amounts to a breach of the Agreement under the provisions cited by OJC, Count I of the Counterclaim fails to state a plausible claim for breach of contract. The Court will dismiss Count I with leave to re-plead to attempt to state a plausible claim for breach of contract.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). A claim for breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached. *Id.* at 1317–18. Because OJC has failed to allege a breach of an express term of the Agreement for the reasons stated *supra*, OJC's claim for breach of the implied covenant of good faith and fair dealing also fails.

### C. Breach of Implied Warranty (Count III)

In Count III, OJC brings a claim for breach of the implied warranty pursuant to Fla. Stat. § 672.314. National Tree argues that Count III fails because OJC does not allege that it notified

National Tree of the breach pursuant to Fla. Stat. § 672.607(3)(a), which states, "the buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). In response, OJC points to its allegation that it "repeatedly advised National Tree that these cancellations, late shipments, **defective shipments**, and mis-shipments, will cause significant economic damage to OJC." [DE 24] at ¶ 41 (emphasis added). In its reply, National Tree argues that there is no allegation that OJC notified National Tree of any *specific* defective product as required by § 627.607.

Under Federal Rule of Civil Procedure 8(a), a complaint is only required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, "[w]here the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983). Construing the allegations in the light most favorable to OJC, the Court finds that OJC has set forth plausible allegations of notice, at least at this stage in the litigation. While National Tree's argument regarding notice may prove to have merit, whether OJC's notice was sufficient is a question of fact not appropriate for resolution at the motion to dismiss stage. *See Razen v. FCA US LLC*, No. 619CV831ORL40LRH, 2019 WL 7482214, at *3 (M.D. Fla. Oct. 23, 2019).

National Tree also argues that there is no allegation that, after being notified of a defective shipment, National Tree failed to replace or refund the defective product. Though OJC is required to allege "that it provided notice to the seller of the breach of warranty," *see Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments Manufacture Co.*, No. 8:12-CV-1839-T-36EAJ, 2015 WL 12732417, at *5 (M.D. Fla. Apr. 28, 2015), National Tree

8

does not cite any authority requiring OJC to allege that National Tree failed to cure after receiving such notice.[3]

Accordingly, National Tree's Motion is denied as to Count III.

**D. Tortious Interference with Business Relationship (Count IV)**

In Count IV, OJC brings a claim for tortious inference with a business relationship, alleging that National Tree intentionally and unjustly interfered with OJC's business relationships with its customers and with its third-party marketplaces by issuing misleading tracking numbers and causing improper cancellations, late shipments, defective shipments, and mis-shipments. [DE 24] at ¶ 77.

"The elements of a claim for tortious interference with a business relationship are: (1) 'the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; [ (2) ] knowledge of the relationship or expectancy on the part of the interferer; [ (3) ] an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [ (4) ] resultant damage to the party whose relationship or expectancy has been disrupted.'" *Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-CIV, 2018 WL 4208343, at *4 (S.D. Fla. Aug. 23, 2018) (quoting *Smith v. Ocean State Bank*, 335 So. 2d 641, 643 (Fla. 1st DCA 1976). "A business relationship need not be evidenced by a contract, but it generally requires 'an understanding between the parties [that] would have been completed had the defendant not interfered.'" *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). Importantly, a tortious interference claim "must be based on a business relationship with an identifiable party or parties—interference with a party's relationship with the public at large is not sufficient[.]" *Miracle 7, Inc. v. Halo Couture, LLC*,

---

[3] Though National Tree's replacing or refunding a defective product may be relevant to OJC's ability to later prove damages, OJC is not required to prove its claims at the pleading stage.

9

No. 13-61643-CIV, 2014 WL 11696708, at *3 (S.D. Fla. Jan. 17, 2014) (citing *Int'l Sales*, 262 F.3d at 1156).

Here, OJC does not allege that National Tree interfered with its relationship with any specific customer; instead, OJC alleges that National Tree interfered with OJC's relationship with its "customers that purchased National Tree products." [DE 24] at ¶ 74. But "customers that purchased National Tree products" are not particular parties, even if, as OJC argues, "National Tree knew exactly who those customer[s] were." [DE 40] at 5. More importantly, OJC has not set forth allegations that identifies an understanding between it and any of its existing "customers that purchased National Tree products" that would have been completed had National Tree not interfered. *See Int'l Sales*, 262 F.3d at 1154; *see also Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815. Absent an allegation of an identifiable agreement or understanding with these customers that they would return for future business, OJC has failed to state a claim. *See MQ Assocs., Inc. v. N. Bay Imaging, LLC*, 270 F. App'x 761, 766 (11th Cir. 2009) ("The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim.").

Unlike its customers, OJC does identify "third-party marketplaces, including Amazon and Walmart" as identifiable parties with which it had a business relationship. [DE 24] at ¶ 75. But the Court agrees with National Tree that OJC fails to identify *how* its relationship with these third-party marketplaces was damaged. Accordingly, Count IV is dismissed with leave to amend.

### E. Fraud (Count V)

"Under Florida law, the essential elements of common law fraud are: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent

injury by the party acting in reliance on the representation.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (quoting *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)). Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In Count V, OJC alleges National Tree knowingly and intentionally made false statements to OJC about its ability to timely ship products to induce OJC to sell National Tree products during the 2020 Christmas holiday season. [DE 24] at ¶ 81–82, 84. OJC further alleges that National Tree knowingly and intentionally made false statements to OJC that orders were shipped when they were not shipped to induce OJC to continue to sell National Tree's products. *Id.* at ¶ 86. To satisfy the particularly requirement of Rule 9(b), OJC points to an August 5, 2019 e-mail from National Tree to OJC regarding out-of-stock problems for the "upcoming season," and a November 27, 2020 communication between National Tree and OJC regarding the status of 432 orders. *Id.* at ¶¶ 83, 88–93.

National Tree argues that OJC's allegations regarding the August 5, 2019 e-mail, in which a National Tree representative promised there would be no out-of-stock problems for the "upcoming season," cannot possibly serve as the basis for a fraud claim related to the 2020 season. It appears that National Tree is challenging OJC's reasonable reliance on the August 5, 2019 e-mail. While it is true that a party alleging fraud must show that its reliance on the allegedly fraudulent statements was reasonable, *see Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1304 (11th Cir. 2003), whether reliance on a particular statement was reasonable is not an appropriate determination at the motion to dismiss stage, *see*

11

*Kerruish v. Essex Holdings, Inc.*, No. 16-60877-CIV, 2017 WL 10457076, at *2 (S.D. Fla. Aug. 9, 2017).

National Tree also argues that the representations regarding "out-of-stock" issues constitute promises of future action. An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning past or existing fact. *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). There are well-recognized exceptions, however, where "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false" and where "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Id.* The Court cannot say at the pleading stage that National Tree's representations in the August 2019 e-mail were promises of future action, particularly where the allegations suggest that National Tree had superior knowledge of its stock of products and were otherwise intentionally giving false and misleading information. This issue is better resolved at a later stage, after full discovery.

Next, National Tree argues that OJC fails to state a claim for fraud because statements that orders were shipped when they were not shipped are not statements concerning a material fact. "A fact is material if, but for the alleged nondisclosure or misrepresentation, the complaining party would not have entered into the transaction." *Atl. Nat. Bank of Fla. v. Vest*, 480 So. 2d 1328, 1332 (Fla. 2d DCA 1985). According to National Tree, because the alleged statements are about orders that were already placed, pursuant to an agreement that was already in effect, they cannot possibly satisfy this element of OJC's fraud claim.  While the Court acknowledges the appeal of National Tree's argument, materiality is generally a fact issue rarely

12

appropriate for resolution on a motion to dismiss. *See Silverman v. Pitterman*, 574 So. 2d 275, 276 (Fla. 3d DCA 1991). Construing the allegations in the light most favorable to OJC, the Court finds that OJC has set forth plausible allegations that the alleged misrepresentations were material to OJC continuing to sell National Tree's products, which the Court must accept as true at this stage.

Finally, the Court rejects National Tree's argument that OJC does not allege that National Tree failed to process returns or otherwise failed to provide a credit for a disputed invoice amount and, therefore, cannot establish damages flowing from any alleged late shipments. Concluding that OJC cannot establish damages because there is no allegation that National Tree failed to resolve late shipments would require the Court to draw inferences in favor of National Tree. Such an analysis is not appropriate at the motion to dismiss stage. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns*, 376 F.3d 1065, 1070 (11th Cir. 2004) (holding that a court must accept the factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party).

Accordingly, National Tree's Motion is denied as to Count V.

### F. FDUTPA (Count VI)

Finally, National Tree contends that OJC has failed to sufficiently plead a necessary element for its FDUTPA claim, actual damages. To prevail on a FDUTPA claim, a party must show "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Hucke v. Kubra Data Transfer*, Corp., 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015). "Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Heller*, 454 So. 2d 580,

13

585 (Fla. 3d DCA 1984). However, "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (internal quotations omitted).

Here, OJC alleges that National Tree committed an unfair and deceptive trade practice by intentionally making false statements to OJC about its ability to ship products timely during the Christmas holiday season, and by providing tracking numbers and representing to OJC that orders were shipped when they were not shipped. [DE 24] at ¶ 98. As a result, OJC alleges that it "suffered hundreds of thousands of dollars in damages." *Id.* at ¶ 100. To support its claim of damages, OJC points to two allegations regarding the delivery of National Tree's products right before or after Christmas, and even after customers canceled their orders. But OJC does not allege *how* it was damaged by representations that items had shipped when they were not shipped. More importantly, based on OJC's general assertion that it "suffered hundreds of thousands of dollars in damages," the Court cannot discern whether OJC is merely seeking actual damages, which are recoverable, or other damages that fall outside the definition of actual damages, which are not recoverable. Accordingly, the Court will dismiss Count VI to allow OJC to sufficiently allege facts in support of the actual damages element of this claim.

## IV. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. National Tree's Motion to Dismiss Counterclaim [DE 38] is **GRANTED IN PART AND DENIED IN PART;**

2. Counts I, II, IV, and VI of the Counterclaim [DE 24] are **DISMISSED WITHOUT PREJUDICE** and with leave to amend; and

3. OJC may file an Amended Counterclaim in accordance with this Order on or before **January 27, 2023** or file a Notice stating that it is proceeding only on the claims that were not dismissed in this Order.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida this 13th day of January, 2023.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnishes to:
Counsel of Record