## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-60897-DIMITROULEAS/STRAUSS

**NATIONAL CHRISTMAS PRODUCTS, INC.**
d/b/a National Tree Company,
a New Jersey Corporation,

      Plaintiff,

v.

**OJ COMMERCE, LLC,** a Florida Limited
Liability Company,

      Defendant.

_____/

## DISCOVERY ORDER

**THIS MATTER** came before the Court upon Defendant's Expedited Motion for Clarification of the January 25, 2024 Discovery Order and Extension of the Jurisdictional Discovery Deadline ("Motion"). [DE 122]. I have reviewed the Motion, the Response [DE 125] and Reply [127] thereto, and all other pertinent portions of the record. For the reasons discussed herein, the Motion is **DENIED**.

## BACKGROUND

After nearly two years of litigation, Plaintiff claimed to have recently discovered that its corporate structure is not an S-Corp but rather an LLC. *See* [DE 95]. Plaintiff further proffered that one of its members is a resident of Florida and, because it is an LLC, this fact would destroy diversity between the parties, thereby depriving this Court of subject matter jurisdiction.[1] *Id.* In

---

[1] Plaintiff identified an individual by the name of Mark Hajduch ("Hajduch") as a partner in an entity at the end of long chain of partnerships and LLCs whose citizenship Plaintiff argues is imputed to Plaintiff. Plaintiff further maintains that, for diversity jurisdiction purposes, Hajduch is a citizen of Florida (and, thus, that Plaintiff is a citizen of Florida).

light of that revelation, Plaintiff moved to dismiss without prejudice the claims and counterclaims in this action pursuant to Federal Rule of Civil Procedure 12(h)(3). *Id.* Defendant objected to this relief and requested that the Court permit Defendant to conduct jurisdictional discovery to clarify whether Plaintiff's statements were true and confirm whether there was no longer diversity between the parties. [DE 96].

After conducting a status conference on January 22, 2024, regarding the need for and appropriate scope of jurisdictional discovery [DE 103], on January 25, 2024, I entered an order granting in part Defendant's request to conduct jurisdictional discovery. *See* [DE 106]. That order stated in relevant part that:

    a.  Defendant shall have sixty days from the date of this order to conduct jurisdictional discovery.

    b.  Defendant's discovery requests shall be limited and targeted towards determining whether Hajduch (at the time Plaintiff filed this action) was a citizen of Florida (for diversity jurisdiction purposes), and did Hajduch's citizenship (at the time Plaintiff filed this action) have any bearing on Plaintiff's citizenship.

    c.  Defendant may seek jurisdictional discovery through requests for production, interrogatories, depositions by written questions, or depositions by oral examination. No requests for admission should be served.

    d.  Plaintiff shall respond to any demands for written discovery within fourteen days.

    e.  Because of Plaintiff's alleged structure, some people and documents might not technically be within Plaintiff's "control" or "custody." Nevertheless, Plaintiff shall make every reasonable effort to produce, or facilitate the production of, the requested individual(s) and documents expeditiously.

    f.  Should discovery require the production of sensitive, unredacted documents, the parties (and/or the producing entity) shall confer about designating such documents as "Attorneys Eyes Only" to minimize disputes.

    g.  Should the parties encounter any objections or discovery disputes, the parties are directed to follow my Discovery Procedures Order. [DE 36].

> h. Defendant shall respond to Plaintiff's Motion to Dismiss [DE 95] within 10 days of the expiration of the sixty-day discovery period.

[DE 106] at 6–7 (footnote omitted).

One of the issues addressed at the status conference was the extent to which redacted documents identified by Plaintiff had conclusively established the chain of entities and their members or partners that would impute Hajduch's citizenship to Plaintiff. As stated in my order, "Defendant is entitled to conduct limited discovery targeted at verifying the existence and memberships of the entities to which Plaintiff points." [DE 106 at 4]. Yet the order also made clear that some details regarding the chain of entities Plaintiff identified and the various ownership interests and relationships among the members of those entities was beyond the scope of discovery, since what ultimately matters is whether the individuals and entities Plaintiff identified were, in fact, members or partners of the entities Plaintiff said they were members or partners of at the time Plaintiff filed the case. *Id*. at 5. In particular, the Court rejected Defendant's suggestion (after providing Defendant an opportunity to provide case law it purported to have to the contrary) that further details of the relative ownership interests or roles of identified members or partners were relevant to determining whether those members' or partners' citizenship counted toward the citizenship of their entity. *Id*. at 6 n.3. But the order explained that Defendant was allowed to inquire about members or partners "to the extent that it genuinely bears on the veracity of whether they are a member or partner." *Id*.

Less than a month later, in what has become a common occurrence in this litigation, the parties requested the Court's intervention in a discovery dispute. *See* [DE 107, 111]. One of disputes was over redacted documents Plaintiff had produced regarding the identified chain of entities. *See* [DE 109] at 7. In short, Plaintiff had redacted all portions of the documents other

than those identifying the members or partners of the entity at issue; Defendant argued that it needed to see the entire unredacted documents (perhaps under an attorneys eyes only protection) because the documents might contain contingencies, waiver provisions, termination clauses, or some other kind of provision that would contradict whether the listed members or partners of the entity actually were members or partners.  *Id*.; [DE 114] at 44.

At the hearing on the matter on February 22, 2024, Plaintiff insisted that no such contingencies that could affect whether an entity was a member or partner had been redacted, [DE 114] at 46, 51, and pointed out that Defendant had not asked (among many interrogatories propounded) who the members of the various entities on the relevant date, *id*. at 53, (nor, presumably, whether any theoretical contingencies could affect who is a member despite being identified by as one in the documents).  Relatedly, the parties had a dispute over a proposed deposition of Plaintiff's CFO, Mr. Krishnamurthy.  Based on Defendant's arguments at the hearing, it was clear that Defendant sought that deposition of Mr. Krishnamurthy (or some other 30(b)(6) witness or witnesses) in order to ask questions about the membership of the various entities at issue, including whether the kind of theoretical contingencies affecting membership exist.  *Id*. at 62–66.  The hearing also discussed interrogatories to Hajduch and the need to depose him, all of which centered around determining his domicile and citizenship.  *See* [DE 109]; [DE 114] at 1–42.

After conducting the hearing on these (and other) disputes, on February 23, 2024, I entered an additional order that, in relevant part, denied Defendant's motion to compel the unredacted documents.  [DE 112].  As explained at the hearing, the rationale was that, while Defendant may wish to test Plaintiff's answers (or answers of the various entities at issue) about who were

members or parties of the relevant entities, Defendant provided nothing but speculation as to theoretical contingencies affecting membership that could be in those documents.  [DE 114] at 57. Given that the existence of such contingencies was "rather speculative," weighed against the interests of the entities in protecting their financial arrangements raised by Plaintiff, I found that ordering production of the unredacted documents was disproportionate to the needs of the case. *Id*.  That ruling remains pending on appeal.  *See* [DE 113].

Related to the issue of Mr. Krishnamurthy, I denied without prejudice Defendant's Motion to Compel Depositions, in part because there was no indication that Mr. Krishnamurthy would be the person knowledgeable of the membership of the various relevant entities.  *See* [DE 112] at 2; [DE 114] at 67.  Instead, I directed the parties "to confer regarding knowledgeable individuals to whom Defendant may direct written questions regarding the membership of the entities in the chain of ownership identified by Plaintiff in its Motion to Dismiss."  [DE 112] at 2; [DE 114] at 67, 69.

Eventually, Defendant subpoenaed Hajduch for a deposition.  Plaintiff sought to quash that deposition in light of Defendant filing a separate case; Plaintiff argued that the new case rendered the whole dispute about subject matter jurisdiction potentially moot and suggested that Defendant was using jurisdictional discovery (including Hajduch's deposition) to gather information for its new case.  [DE 115].  On March 12, 2024, I denied the motion to quash but warned that "the scope of the deposition is strictly limited to determining the deponent's domicile as relevant to determining the Court's subject matter jurisdiction."  [DE 119].  Defendant did not seek any clarification of that order.

On March 20, 2024, approximately a month after the February 22 discovery hearing and February 23 order, and five days before the end of the jurisdictional discovery period, Defendant

filed the instant motion seeking "clarification" of my January 25 order and seeking an extension of the jurisdictional discovery period.

**ANALYSIS**

Defendant's motion seeks two forms of relief.  First, Defendant seeks clarification as to whether the Court's order [DE 106] allowing it to take discovery about whether "Hajduch's citizenship (at the time Plaintiff filed this action) ha[d] any bearing on Plaintiff's citizenship" allows Defendant "to test the veracity of Plaintiff's alleged membership chain in a deposition by oral examination." [DE 122] at 3.  If the answer is "yes," Defendant asks for two additional weeks within which to conduct a further deposition of Hajduch and an (unnamed) 30(b)(6) witness or witnesses.  Defendant argues that such clarification is needed because "Plaintiff has taken the position that the only question that Defendant can even ask about the chain entities is whether the member Plaintiff has alleged was in fact the member of the entity at the time the Complaint was filed." *Id*. at 1–2 (emphasis removed).  As evidence of the need for clarification and additional time, Defendant cites to several objections lodged by Plaintiff's and Hajduch's attorneys during Hajduch's deposition on March 14, 2024.  [DE 122–1].

To the extent the Motion seeks clarification of the January 25, 2024 Discovery Order, the Court sees nothing unclear about its order (or subsequent orders).  Therefore, the Court sees nothing to clarify.  The Court has never said that Defendant could not "test the veracity" of answers it has been given regarding membership of the relevant entities or had to "take Plaintiff's word for it."  What the Court has said is that Defendant was not entitled to receive completely unredacted organizing documents on the mere speculation that those documents might have some contingency provision that might have affected the membership of one of the relevant entities at the time Plaintiff filed this case and that Defendant was entitled to direct targeted questions about

membership to 30(b)(6) witnesses to be identified through conferral of the parties.  The Court cannot anticipate every permutation of question through which Defendant would hope to "test the veracity" of whatever answers it was given and declines to give an advisory ruling regarding questions not asked.

Notably, Defendant's motion asks for "clarification" and does not seek to overrule or otherwise explicitly address any of the objections lodged by Plaintiff's and Hajduch's attorneys during Hajduch's deposition.  However, even if those objections in some instances suggest an overly-narrow interpretation of the scope of discovery, Defendant has not demonstrated that it is entitled to further time to conduct the additional depositions (or re-deposition for Hajduch) that it seeks.

During the portion of Hajduch's deposition attached to Defendant's motion, Plaintiff's and Hajduch's attorneys lodged objections to (and prevented Hajduch from answering) questions about whether Hajduch had read and understood the partnership agreement for Sun Capital Advisors VII, LP (the entity in which Hajduch is allegedly a limited partner) and whether there were "terms in that agreement where [Hajduch] could lose [his] partnership[.]"  [DE 122–1] at 3.

Hajduch did, however, answer that he was familiar with that agreement and that there were no breaks in or termination of his partnership in 2022.  *Id.*  Defendant then asked whether any "contingency" arose during 2022 regarding Hajduch's partnership, but Defendant seemingly abandoned the question after Hajduch said he did not understand it.  *Id.*

Plaintiff's and Hajduch's attorneys then lodged objections and prevented answers to a series of questions of  whether he knew (through Hajduch's personal knowledge and not as a corporate representative) who the members of the chain of entities tracing all the way back to Plaintiff were.  Specifically, Defendant asked Hajduch if "Sun, Capital Advisors VII, L.P., [is] the

general partner of Sun Capital Advisors VII, L.P.[2]," if "Sun Capital Partners VII, L.P., [is] the sole member of Sun Holdings VII, LLC," if "the one member of National Tree Ultimate Holdings, LLC, Sun National Tree, L.P., [is] a Cayman Islands limited partner," and if Hajduch is "a member of National Christmas Products, LLC." [DE 122–1] at 4–5.

These lines of questioning do fit squarely within my previous order permitting Defendant to seek discovery on whether "Hajduch's citizenship (at the time Plaintiff filed this action) ha[d] any bearing on Plaintiff's citizenship." [DE 106] at 6. Nevertheless, as Plaintiff argues in its response, my order denying Plaintiff's Motion to Quash the deposition warned the parties to limit Hajduch's deposition to determining his domicile. [DE 119]. The Court added that limitation primarily to prevent Defendant from using the deposition to further its newly filed case but also because all of the discussion regarding Hajduch at previous hearings had focused on issues regarding his domicile. Again, following that order, Defendant did not seek any clarification or protest that it intended to also use Hajduch's deposition to explore the membership of the entities in the chain.

Moreover, even if Hajduch had personal knowledge regarding the membership of the whole chain of entities, those questions would be better answered by a corporate representative under Federal Rule of Civil Procedure 30(b)(6), which is why the Court specifically directed the parties to confer and identify such 30(b)(6) witnesses at the end of the February 22 hearing and in my February 23, 2024 Discovery Order. *See* [DE 112] at 2 ("[T]he parties are directed to confer regarding knowledgeable individuals to whom Defendant may direct written questions regarding the membership of the entities in the chain of ownership identified by Plaintiff in its Motion to Dismiss."). As discussed further below, it seems Defendant did not avail itself of this opportunity.

---

[2] Hajduch answered "yes" prior to Plaintiff's and his attorneys objecting to the question and instructing him not to answer the question. [DE 122–1] at 4.

Thus, having Hajduch sit for an additional deposition, to answer those very specific questions regarding all of the various chain entities, is not proportional to the needs of the case.

Questions regarding Hajduch's status as a limited partner in Sun Capital Advisors VII, LP and whether there were contingencies that could have "tested the veracity" of Hajduch's claim that he was a limited partner in 2022 are different.  However, as described above, Defendant was able to ask about any potential "break" or "termination" in Hajduch's partnership and abandoned its question regarding any "contingencies" that may have arisen in 2022.  Therefore, a further deposition of Hajduch is not warranted.

With or without any clarification, Defendant is not entitled to further time to conduct 30(b)(6) depositions.  Again, on February 22 and 23, I directed the parties to confer on identifying 30(b)(6) witnesses to whom Defendant could propound targeted written questions "regarding the membership of the entities in the chain of ownership identified by Plaintiff in its Motion to Dismiss."  According to Plaintiff, Defendant has not followed those instructions and has not conferred with Plaintiff about to whom Defendant should direct written questions.  Defendant's Motion does not explain the steps it took to identify possible 30(b)(6) witnesses, explain what "targeted questions" it propounded to those witnesses, identify objections that Plaintiff has lodged to such "targeted questions" that Defendant believes requires the "clarification" Defendant seeks, or why Defendant needs additional time to take any of these actions.  Nor does its Reply refute Plaintiff's assertion that Defendant failed to confer regarding 30(b)(6) witnesses after the February hearing.  Indeed, the fact that Defendant's motion cites only Plaintiff's conduct at Hajduch's deposition (on March 14 – a mere 11 days prior to the jurisdictional discovery deadline) as evidence that it needs clarification before conducting 30(b)(6) depositions speaks volumes.  Thus, regardless of whether any "clarification" of the Court's order is given, Defendant has failed to

show good cause as to why the Court should extend the discovery deadline in light of its apparent failure to confer and take the steps necessary to even attempt the depositions that its sought clarification would supposedly serve.

Therefore, it is **ORDERED** and **ADJUDGED** that the Motion is **DENIED**.

**DONE** and **ORDERED** in Fort Lauderdale, Florida, this 29th day of March 2024.

**Jared M. Strauss**
**United States Magistrate Judge**