UNITED STATES COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-cv-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

   Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company

   Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

  Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("Plaintiff"), by and through undersigned counsel, opposes Defendant OJ Commerce, LLC's ("OJC" or "Defendant") Motion for Sanctions [D.E. 139], filed on July 8, 2024.

## FACTUAL BACKGROUND

1. On May 12, 2022, Plaintiff filed its Complaint against Defendant, seeking damages in the amount of $781,474.14 for (i) breach of contract, (ii) account stated and (iii) goods sold and delivered.

2. The Complaint alleged that diversity jurisdiction existed as between Plaintiff, a New Jersey S-Corp., and Defendant, a Delaware LLC whose sole member is a resident of Florida.

3. On May 13, 2022, the Court issued an order to show cause (the "OSC") requiring that Plaintiff file an addendum to its Complaint listing the citizenship of every member of any party that is a limited liability company or any other form of unincorporated business or association. *See*

1

D.E. 6. As Counsel for Plaintiff believed at the time that Plaintiff (a) was a New Jersey S-Corp., and (b) the proper Plaintiff party, Plaintiff's response to the OSC was directed to the membership and citizenship of OJ Commerce.

4. On July 8, 2022, Defendant moved to dismiss all three claims. Defendant did not move to dismiss or otherwise challenge this Court's subject matter jurisdiction. On August 23, 2022, this Honorable Court denied Defendant's motion to dismiss the breach of contract and account stated claims, and granted dismissal of Plaintiff's goods sold and delivered claim.

5. On September 20, 2022, Defendant filed its Answer, Affirmative Defenses, and Counterclaims. Defendant's counterclaims against Plaintiff included claims for (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) breach of implied warranty, (iv) tortious interference with business relationship, (v) fraud and (vi) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

6. Defendant alleged that diversity jurisdiction existed as between Plaintiff and Defendant, for purposes of Defendant's counterclaims, because Plaintiff was a New Jersey S-Corp. and Defendant was a Delaware LLC whose sole member resided in Florida.

7. On November 21, 2022, Plaintiff moved to dismiss all six counterclaims. On January 13, 2023, this Honorable Court granted Plaintiff's motion to dismiss in part, and dismissed certain claims with leave to amend.

8. On January 27, 2023, Defendant filed Amended Counterclaims, including the same six counterclaims. The amended counterclaims again alleged the existence of diversity jurisdiction as between Plaintiff and Defendant on the grounds that Plaintiff was a New Jersey S-Corp. and Defendant is a Delaware LLC whose sole member is a resident of Florida.

9. On February 10, 2023, Plaintiff filed its answer to Defendant's Amended Counterclaims.

10. Neither Plaintiff nor Defendant submitted Rule 7.1 statements. At the time those statements would have been due, however, the Rule did not require a statement identifying the citizenship of each party.

11. Thereafter, the parties engaged in discovery, which included twelve (12) depositions, tens of thousands of pages of discovery, interrogatories, notices to admit, and three (3) discovery hearings.

12. On November 13, 2023, Plaintiff's CFO informed counsel that Plaintiff is not an S-Corp., as alleged in the Complaint and Defendant's counterclaims, but rather an LLC.

13. Thereafter, counsel conducted an investigation with respect to Plaintiff's corporate identity; that investigation revealed that National Christmas Products, Inc. was merged out of existence and into National Christmas Products LLC, a Delaware LLC, in or about November 8, 2019. The details of counsel's investigation are set forth in the Declaration of John B. Horgan, the "Horgan Declaration"), dated July 22, 2024, annexed hereto as **Exhibit 1.**

14. While counsel's investigation was pending, the parties were simultaneously working to complete all discovery by the December 13, 2023 deadline.

15. At the same time that Plaintiff's counsel was investigating, they were simultaneously preparing to take and defend multiple depositions including: the November 20, 2023 deposition of one of Plaintiff's 30(b)(6) witnesses; the November 21, 2023 deposition of Defendant's CEO (which was cancelled at the last minute); the November 22, 2023 deposition of Defendant's Head of Merchandising and Vendor Management; the November 28, 2023 deposition of Defendant's former Buyer; the December 5, 2023 deposition of Plaintiff's former COO (who Defendant claimed no longer worked for the company on November 20, 2023); the rescheduled December 5, 2023 deposition of Defendant's CEO; the December 7, 2023 deposition of Defendant's expert,

Richard Bolko ("Mr. Bolko"); responding to Defendant's third set of discovery requests which were due on December 8, 2023; and responding to Defendant's fourth set of discovery requests which were due on December 13, 2023.

16. On top of those depositions and discovery responses, the parties had substantial additional discovery disputes, which took significant time and resources.

17. At 5:33pm on December 6, 2023, the night before Defendant's expert was scheduled to be deposed and seven days before the close of discovery, counsel for Defendant emailed Plaintiff informing them that "It was discovered today that there was some data missing from the file entitled "Damage Calc 2020-2021.xlsx," produced on October 4, 2023.  To summarize, there were orders missing from the document, sales tax was included but not deducted, and delivery data for each order was inadvertently omitted.  We are in the process of amending this file, and expect to provide you with an updated file as soon as possible."

18. At 6:45pm that same night, Mr. Hecht emailed the updated Damages Calculation file, which contained an additional 43,000 rows of data related to Plaintiff alone and cut damages estimated damages in half. Mr. Hecht further informed Plaintiff that Mr. Bolko would be revising his report based on the new data.

19. As a result of the foregoing, Plaintiff was unable to proceed with the December 7, 2023 deposition scheduled for Mr. Bolko.

20. On December 7, 2023, three hours after Mr. Bolko's deposition was scheduled to start, Plaintiff served Mr. Bolko's amended expert report (the "Amended Bolko Report") and supplemental discovery responses.

21. Defendant claimed that, because Mr. Bolko's methodology did not change in the Amended Bolko Report and Defendant's claimed damages was actually reduced, there was no need for

4

Plaintiff's expert to revise his rebuttal report. Defendant further refused to postpone Mr. Khemlani's deposition, scheduled for December 8, 2023.

22. Plaintiff declined to produce Mr. Khemlani on December 8th, as Mr. Khemlani would have had less than two days to review Mr. Bolko's amended report and three days to review the *substantial* new data concerning the relevant orders, sales, and delivery information, which were the basis for Defendant's claimed damages and thus highly significant to Mr. Khemlani's analysis.

23. As of the close of discovery on December 13, 2023, the parties had not resolved their disputes concerning the Amended Bolko Report . Neither party's expert had been deposed and Defendant was steadfastly refusing to re-schedule those depositions. As of the close of discovery, before Plaintiff determined that dismissal might be necessary, Plaintiff intended to make a motion concerning these expert discovery issues.

24. It was not until December 21, 2023 that Plaintiff learned that there was potentially a Florida citizen within Plaintiff's membership chain, which would destroy diversity.

25. As soon as counsel for Plaintiff learned of this potential break in the chain, counsel sought additional information but, due to the Christmas holiday, did not receive confirmation until December 28, 2023.  Thereafter, counsel for Plaintiff prepared a motion to dismiss, which it filed on January 4, 2024 (the "Motion to Dismiss").

26. On January 9, 2024, Defendant moved to amend the scheduling order and for expedited jurisdictional discovery (the "Motion for Jurisdictional Discovery"). A day later, the Court stayed the action pending resolution of subject matter jurisdiction and referred the Motion to Dismiss to Magistrate Judge Strauss.

27. On January 25, 2024, Magistrate Judge Strauss granted in part Defendant's Motion for Jurisdictional Discovery, allowing sixty (60) days for jurisdictional discovery and limiting

5

Defendant's discovery requests to two targeted issues: (i) whether Mark Hajduch (at the time Plaintiff filed the action) was a citizen of Florida (for diversity jurisdiction purposes), and (ii) whether Hajduch's citizenship (at the time Plaintiff filed the action) has any bearing on Plaintiff's citizenship (the "January 25 Order"). Magistrate Judge Strauss also extended Defendant's time to oppose the Motion to Dismiss to ten (10) days after the expiration of the sixty-day discovery period.

28. Defendant served 84 interrogatories and 33 requests for production (including subparts) on January 29, 2024 (the "Requests"). Plaintiff provided Defendant with responses and objections to the Requests and produced 312 pages of responsive documents on February 9, 2024.

29. Despite the Court's order limiting jurisdictional discovery, Defendant requested a discovery hearing to compel, in part, unredacted versions of confidential business documents and a deposition of Mr. Hajduch (who Defendant had not yet subpoenaed).

30. On February 23, 2024, Magistrate Judge Strauss issued an order denying Defendant's motion to compel the unredacted versions of confidential business documents, and limited any deposition of Mr. Hajduch to three (3) hours (the "February 23 Order").

31. In the midst of jurisdictional discovery, on February 27, 2024, Defendant filed *OJ Commerce, LLC v. National Christmas Products, LLC. d/b/a National Tree Company, National Christmas Products, Inc. d/b/a National Tree Company, National Tree Intermediary, LLC, National Tree Holding, LLC, Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo*, Case No. 0:24-cv-60331 (the "Second Action"), which Defendant stated arose out of the same set of facts and circumstances, and the same commercial relationship, underlying the gravamen of the claims and counterclaims of the instant action.

32. On March 5, 2024, the parties met and conferred to discuss how to best proceed with the

6

instant action and the Second Action. Defendant's counsel proposed that the instant case and the Second Action be consolidated as related cases on the grounds that it did not want to concede that the instant case lacked subject matter jurisdiction. Plaintiff's counsel opposed due to the lack of subject matter jurisdiction in the instant case, and proposed a joint motion to dismiss without prejudice. The parties could not reach an agreement.

33. On March 8, 2024, Defendant sent Plaintiff's counsel a proposed "Joint Motion to Consolidate Cases" and stated that it would continue with jurisdictional discovery.

34. Later that day, Plaintiff sent Defendant a redlined version of Defendant's proposed motion, to reflect that the Court had no subject matter jurisdiction and the instant case had to be dismissed, but otherwise confirming that all discovery conducted in the instant action could be used in the Second Action (or a new state court action if the Second Action is dismissed), so as to eliminate the need for any duplicative discovery. *See* D.E. 115-8.

35. Defendant rejected Plaintiff's proposed changes to the joint motion.

36. On March 8, 2024, Defendant filed an objection to the February 23 Order, insisting that the Court order Plaintiff to produce the unredacted versions of the confidential business documents (the "March 8 Objection").

37. On March 20, 2024, shortly after Defendant filed the Second Action and deposed Mr. Hajduch, Defendant filed an expedited motion for clarification of the January 25 Order, seeking a two-week extension of the jurisdictional discovery deadline to "test the veracity of Plaintiff's alleged membership chain in a deposition by oral examination" (the "Motion for Clarification"). The Motion for Clarification was denied on March 29, 2024.

38. On April 1, 2024, Defendant's March 8 Objection was denied on the grounds that Defendant failed to meet its burden of demonstrating that Magistrate Judge Strauss' February 23 Order was clearly erroneous or contrary to law.

39. On April 2, 2024, Defendant filed its opposition to Plaintiff's motion to dismiss for lack of subject matter jurisdiction (the "Opposition"), alleging that Plaintiff could continue to sue and be sued in that name in perpetuity, and misapplying law that applies to dissolved rather than merged entities. **Notably, Defendant did not use or even mention *any* of the jurisdictional discovery it demanded**.

40. Plaintiff filed its reply on April 9, 2024. Defendant moved for leave to file a sur-reply two days later, which the Court denied the same day.

41. On May 7, 2024, Magistrate Judge Strauss issued a report and recommendation granting Plaintiff's motion to dismiss for lack of subject matter jurisdiction (the "R&R").

42. On May 21, 2024, Defendant filed its objections to the R&R (the "Objections"), which and a raised arguments for the first time that were not raised in opposition to the Motion to Dismiss.

43. On June 6, 2024, the Court overruled the Objections, approved the R&R, granted Plaintiff's motion to dismiss and closed the case.

44. In the midst of conferral related to the Second Action, on June 19, 2024, Defendant sent Plaintiff a proposed stipulation on evidence threatening that it would potentially bring a motion for sanctions and its attorneys' fees and costs related to the discovery from the instant case. This stipulation was a mere rehash of the proposals Plaintiff had already rejected in March; nevertheless, Plaintiff in good faith responded with a proposed redline of the stipulation which would preserve the parties' ability to use in the Second Action any discovery obtained in the instant

8

action, thereby eliminating the possibility of duplicative discovery. Defendant rejected this proposed redline out of hand and brought this motion for sanctions

45. On July 8, 2024, Defendant filed the instant motion seeking sanctions.

## **ARGUMENT**

### I. There is No Evidence of Any Subjective Bad Faith on the Part of Plaintiff or Plaintiff's Counsel

The purpose of the Court's inherent powers to sanction parties is "both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole . . . The inherent power must be exercised with restraint and discretion . . . Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). "In assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties." *Purchasing Power*, 851 F.3d at 1225 (internal citations omitted).

Here, there is no evidence to suggest that Plaintiff or Plaintiff's counsel acted in bad faith. In fact, the evidence clearly shows that Plaintiff's counsel made a mistake in failing adequately to investigate whether National Christmas Products, Inc. or National Christmas Products, LLC was the proper Plaintiff. Contrary to Defendant's bald speculation, there is no evidence to suggest that Plaintiff or Plaintiff's counsel had any intent to deceive this Court at any time, nor is there any evidence to suggest that Plaintiff delayed either (a) performing its investigation, or (b) informing the Court of the results thereof, in order to gain some kind of "tactical advantage." Plaintiff gained no such advantage and has clearly and credibly explained that it waited until its investigation determined that National Christmas Products, LLC had Florida citizenship for diversity purposes

9

before doing the only thing it could do under the circumstances: move to dismiss the instant diversity action without prejudice on the grounds that that the Court lacked subject matter jurisdiction. Plaintiff understood the seriousness of the investigation and the potential conclusions resulting therefrom, performed it carefully, and once it had the answer it sought moved without any undue delay to dismiss this action without prejudice; this is exactly the kind of careful and deliberate analysis, followed swiftly by remedial action, that the Courts should expect from counsel under the circumstances.

Defendant nonsensically alleges that Plaintiff waited until the "eve of dispositive motions" to file the Motion to Dismiss in order to use it as a "trap-door escape route to re-litigate this dispute in a new case." Motion at 9.[1] It is unclear how re-litigating this case in a different forum would serve as a "trap-door escape route" or otherwise benefit Plaintiff, which has already spent significant time and resources litigating the instant Action. Regardless of the forum of this dispute, the facts and evidence remain the same.

Defendant also conveniently ignores its own conduct in failing to inquire as to Plaintiff's corporate status. Defendant admits that it received the March 14, 2022 demand letter sent in the name of National Christmas Products (motion, at ¶ 3), yet, over the course of more than a year of discovery (including four requests for interrogatories, eight (8) depositions, four (4) document requests, and two (2) requests for admissions), Defendant failed to ask *a single question* as to whether Plaintiff was an LLC or an S Corp., despite (1) having received a demand letter from National Christmas Products, LLC and (2) knowing that it had been making payments to National

---

[1] Defendant seems to suggest that Plaintiff would be in a "much better position" if discovery was re-opened, suggesting that Defendant is aware of and in possession of evidence that was not produced in discovery, but would be in the event discovery was re-opened. *See* Oppo. at 2. Regardless, the evidence that Defendant itself submits shows that Plaintiff has no intention of re-doing discovery that was already completed when this case is litigated in an appropriate forum. *See* Motion, Ex. B.

10

Christmas Products, LLC since 2020. Defendant suggests that Plaintiff's corporate representative mislead Defendant and the Court in its deposition, yet the transcript testimony shows that Defendant did not actually ask the witness whether they worked for National Christmas Products, Inc. or LLC, nor did Defendant even ask the witness to review the caption for its accuracy. *See* Motion, ¶ 15 (quoting the deposition transcript of Dennis Cooke, one of Plaintiff's corporate designees).

The *Purchasing Power* case is instructive. In *Purchasing Power,* prior to seeking removal to Federal court, the defendant sought confirmation of Purchasing Power's citizenship for diversity purposes from counsel for Purchasing Power. In response, attorneys for Purchasing Power investigated the citizenship of Purchasing Power, which it knew was an LLC, but failed to discover an entity within the chain that destroyed diversity. *See Purchasing Power*, 851 F.3d 1218 at 1222. Upon appeal of summary judgment, the Eleventh Circuit remanded the case back to the District Court to determine whether the Court had subject matter jurisdiction. Upon remand, the District Court found that no subject matter jurisdiction existed and awarded sanctions against Purchasing Power. *Id*. The 11th Circuit reversed the District Court's award of sanctions finding that "[n]o party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants." *Purchasing Power,* 851 F.3d at 1228. Similarly, here, there is no evidence of any bad faith on the part of Plaintiff or Plaintiff's counsel. Plaintiff's counsel mistakenly believed that National Christmas Products, Inc. was the proper plaintiff and Plaintiff failed to catch that mistake until November 2023. As soon as counsel for Plaintiff learned of the mistake, it immediately began an investigation. At no time prior to November 2023 did Defendant ask a single question in discovery

or otherwise as to whether National Christmas Products, Inc. or National Christmas Products, LLC was the relevant entity. Where, as here, neither Plaintiff nor Plaintiff's counsel acted with bad intentions, sanctions are not warranted. *See Purchasing Power,* 851 F.3d at 1228 (denying sanctions motion for failure to adequately investigate citizenship for diversity purposes); *see also Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC,* No. 18-cv-1112, 2019 WL 1793137, at *7 (E.D. Va. Apr. 24, 2019) (finding no basis for sanctions where there was "no evidence to suggest that counsel had actual knowledge of their client's citizenship prior to" the date they discovered the citizenship issue).

## I.     No Objective Bad Faith

28 U.S.C.A. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A party moving for sanctions under Section 1927 "must show *objective* bad faith . . . The statute imposes a 'high standard' that requires the moving party to show that the other side engaged in behavior that 'grossly deviates from reasonable conduct.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (internal citations omitted) (denying motion for sanctions). For the same reasons that Defendant cannot show subjective bad faith, Defendant also cannot show that Plaintiff or Plaintiff's counsel acted with objective bad faith.

"[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) (emphasis in original). Here, Plaintiff's counsel's conduct does not

meet this standard. In fact, it was the complete opposite. Any "delayed disclosure" by Plaintiff's counsel (as alleged by Defendant) is a mischaracterization: counsel independently conducted a **complete** investigation into the citizenship in order to *avoid* needlessly obstructing this litigation when it was near discovery's end. Plaintiff's counsel mistakenly believed the entity named in the parties' agreement was the proper Plaintiff. Given the complexities of subject matter jurisdiction in the context of LLCs, that mistake was not egregious or even particularly uncommon. Plaintiff did not put forth any frivolous claims in this Action and intends to raise those claims in the appropriate forum. Plaintiff has repeatedly informed Defendant that it has no intention of duplicating discovery that was already completed in this Action and has <u>*twice*</u> offered to enter into a stipulation to that effect. *See* D.E. 115-8 at ¶¶ 23-24 and 139-2 at ¶ 13. As the parties intend to litigate these identical claims in the appropriate forum, and Plaintiff has repeatedly offered to stipulate that it will not duplicate discovery already completed, none of the discovery or motion practice in this Action will have been wasted. The punitive sanctions Defendant seeks are thus entirely inapposite.

## II.     Attorneys' Fees Have Not Been Needlessly Incurred

Defendant alleges that Plaintiff "demand[ed] that discovery be reopened and more depositions and other discovery take place, and to potentially re-open all the discovery that was already completed." Motion, at 2. In support of this, Defendant cites to Plaintiff's redlined stipulation, which states the opposite: Plaintiff agreed that "[t]o the extent the parties re-assert claims and defenses identical to those in the First Case, the parties agree that the discovery already conducted in the First case may be used in another case involving the same claims and defenses, as it would have been used in the First Case." *See* Ex. B at 13.[2] Plaintiff did not "demand" that

---

[2] In fact, the redlined stipulation was the second time that Plaintiff expressly agreed not to re-open discovery that had already been completed.

discovery be reopened: it merely sought to "reserve the right to continue expert discovery" in light of Defendant's eleventh-hour submission of an amended Expert Report and damages calculation spreadsheet (which added 43,000 lines of additional data related to Plaintiff's sales orders, delivery data, sales tax) which *drastically* reduced Defendant's claimed damages[3] and precluded Plaintiff from taking the scheduled deposition of Defendant's expert or submitting a new rebuttal report based on the newly produced evidence and report. Ex. B, ¶¶ 8-9, 14.[4]

Further, Plaintiff simply reserved the right to conduct additional discovery "[t]o the extent that new allegations are made," not re-open discovery already completed *Id.* at ¶ 15. Any such reservation of rights is entirely fair and reasonable and does not evidence any "demand" for discovery to be re-opened broadly or for any discovery actually completed to be re-done.

In or about early March 2024, after Defendant filed the Second Action, Defendant provided Plaintiff with a proposed joint motion to consolidate. Plaintiff made edits to that joint motion, which Defendant rejected. *See* D.E 115-8. Plaintiff's draft of the motion included the following terms:

> 23. The parties agree that any discovery already completed in the First Case as to the claims and defenses in that case will not be re-done in the Second Case.
>
> 24. The parties agree that the discovery completed in the First Case will be used in the Second Case.
>
> 25. The parties agree that the discovery in the Second Case will be focused on

---

[3] This new damages calculation and report, which were produced the day Defendant's expert was scheduled to be deposed, contained significant data that was previously unproduced by Defendant and cut Defendant's claimed damages in half. Despite this last-minute production, Defendant refused to reschedule Plaintiff's rebuttal expert's deposition or even permit him to revise his report despite his report being on Defendant's admittedly incomplete data.

[4] Had the case not been dismissed, Plaintiff would still have had the ability to move for the deposition of Defendant's expert and submit a supplemental rebuttal report based on the late-produced data and revised report. If Plaintiff had agreed to Defendant's proposed stipulation, Plaintiff would have been in a worse position than it would have been in had the case not been dismissed. Whereas the language proposed by Plaintiff would have, at worst, maintained the status quo and, at best, avoided unnecessary motion practice.

14

> the claims and defenses in the Second Case, aside from expert discovery from the First Case which was not completed.

*See* D.E. 115-8. Plaintiff has been clear since March 2024, and has offered to so stipulate, that in litigating these claims in the Second Action or a new state court action if the Second Action is dismissed, it will not duplicate any discovery that has already been completed in this action. Yet Defendant ignores this proposed joint motion, the redlined stipulation from Plaintiff, and the fact that Plaintiff also expended substantial time and effort in completing that discovery. Plaintiff merely sought to reserve its rights to discovery it would have been entitled to related to Defendant's last-minute changes to its expert report based on the last-minute production of significant amounts of data underlying its damages calculation that had not been made available to Plaintiff's rebuttal expert prior to the submission of Plaintiff's expert's rebuttal report. Defendant further ignores the fact that, at the time the parties were discussing the stipulations, Defendant had not re-filed any of the claims at issue in the First Action. As such, Plaintiff had to reserve the right to seek discovery on claims and allegations that were not raised in the First Action or risk waiving that right in the event that Defendant decided to re-file and add new claims and allegations. Plaintiff has always averred that, to the extent Defendant pleads its counterclaims from this action as the same additional claims in an amended pleading in the Second Action, there would be no need to duplicate discovery already completed on those claims/counterclaims.

Defendant does not explain what fees it needlessly incurred as a result of the lack of diversity as would warrant an award of attorneys' fees. Instead, Defendant vaguely argues that it is entitled to *all* of its attorneys' fees for the entire case, despite the fact that the parties have clearly both acknowledged that, to the extent the claims are re-filed in another court (or in this Court in the Related Action), the discovery that was completed as related to the claims actually filed in the First Action will be used.

**III.     Any Unnecessary Fees Were the Result of Defendant's Requests for Jurisdictional Discovery Which It Never Intended to Use to Determine Whether the Court had Subject Matter Jurisdiction**

After Plaintiff filed the Motion to Dismiss, Defendant continued to prolong unnecessarily the case by seeking substantial discovery (including through multiple hearings and substantial motion practice), then opposed the motion to dismiss based on a frivolous legal argument that had absolutely nothing to do with any of the discovery it sought in jurisdictional discovery. Then after Defendant's motion was denied, Defendant filed a baseless objection to Magistrate Strauss's Report based on arguments that it failed to make in opposition to the motion to dismiss or otherwise even raise in discovery. While all of this was going on, Defendant also filed a new action against Plaintiff and LLC members of Plaintiff (which it only learned about through jurisdictional discovery), which Defendant admits was directly related to the First Action. To the extent any unnecessary discovery, with its concomitant expense, occurred in this case it is directly attributable to Defendant's conduct with respect to its purported "jurisdictional" discovery in the wake of the Motion to Dismiss. There is no basis on which to award sanctions against Plaintiff, or undersigned counsel, based on Defendant's own misfeasance.

## CONCLUSION

For the foregoing reasons, Defendant's motion for sanctions should be denied in its entirety.

Date: July 22, 2024

                                      Respectfully submitted,

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

*/s/ Jordan D. Utanski*
Kyle A. Johnson, Esq.
Florida Bar No. 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No. 851711
LShinder@RoyBlack.com
Jordan D. Utanski, Esq.
Florida Bar No. 119432
JUtanski@RoyBlack.com

Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105

/s/ *John B. Horgan Esq.*
John Horgan, Esq. (admitted pro hac vice)
jhorgan@egsllp.com
Joanna R. Cohen, Esq.
JCohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

*Counsel for Plaintiff, National Christmas Products, Inc. D/B/A National Tree Company*

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 22nd day of July 2024, I served the foregoing via electronic filing through this Court's CM/ECF system upon Shlomo Y. Hecht, Esq. and Aaron W. Davis, Esq., attorneys for Defendant, OJ Commerce, LLC, at sam@hechtlawpa.com; davis@valhallalegal.com.