UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60897-DIMITROULEAS/STRAUSS

NATIONAL CHRISTMAS PRODUCTS, INC.
d/b/a National Tree Company,
a New Jersey Corporation,

      Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** came before the Court upon Defendant's Motion for Sanctions Against Plaintiff and its Counsel ("Motion").  [DE 139].  The Honorable William P. Dimitrouleas has referred the Motion to me for a Report and Recommendation.  [DE 140].  I have reviewed the Motion, the Response [DE 141] and Reply [DE 142] thereto, and all pertinent portions of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **DENIED**.

## BACKGROUND

The Court has already detailed, in multiple orders and reports and recommendations, this case's long procedural history.  *See* [DE 106, 128, 135].  An abbreviated summary of the facts pertinent to this motion are as follows.

Prior to National Christmas Products, Inc. ("Plaintiff") filing suit, Plaintiff's counsel (Ellenoff Grossman & Schole, LLP, or "EGS") sent a demand letter to OJ Commerce LLC ("Defendant"), in the name of National Christmas Products LLC ("NCP LLC").  [DE 141–1] ¶ 2.

When Plaintiff's counsel sent the demand letter, it did not have in its possession several substantive documents such as the E-Commerce Vendor Agreement between Plaintiff and Defendant. *Id.* When the parties failed to reach an amicable resolution, Plaintiff's counsel received several documents to help it draft Plaintiff's Complaint. *Id.* ¶ 3. Some of those documents were the parties' original agreement and the accounts receivable statement which bore Plaintiff's name. *Id.* With the information it had, Plaintiff's counsel drafted a complaint in Plaintiff's name and presented it to its client, who approved it. *Id.* ¶¶ 4–6.

On May 12, 2022, Plaintiff filed its Complaint against Defendant, alleging the Court had subject matter jurisdiction based on diversity between the parties. [DE 1]. The Complaint alleged that Plaintiff was an S corporation organized under the laws of the State of New Jersey, and Plaintiff's Addendum (filed in response to the Court's Order to Show Cause Regarding Subject Matter Jurisdiction [DE 6]) alleged that Defendant is a Delaware LLC whose sole member is a citizen of Florida (making Defendant a citizen of Florida). [DE 1, 8]. In turn, Defendant filed a counterclaim against Plaintiff [DE 24] and later an amended counterclaim [DE 44]. After nearly two years of litigation, Plaintiff filed a motion to dismiss alleging that the Court lacked subject matter jurisdiction because Plaintiff was actually an LLC and (like Defendant) a citizen of Florida. [DE 95].

According to Plaintiff's motion to dismiss, in November 2023, Plaintiff's CFO informed its counsel that Plaintiff is an LLC, not an S corporation, explaining that Plaintiff no longer exists because it was merged out of existence into NCP LLC in November 2019. *Id.* at 2. Upon learning this information, Plaintiff's counsel began its investigation into Plaintiff's corporate identity. [DE 135] at 2; [DE 141–1] ¶19. Due to NCP LLC's complicated web of ownership, along with fast-approaching discovery deadlines, the investigation took one month to complete and concluded on

December 28, 2023.  [DE 141–1] ¶¶ 23–33.  Plaintiff's counsel discovered that one of NCP LLC's members, through several layers of underlying LLCs and limited partnerships, is (and was at the time the Complaint was filed) a citizen of Florida, thereby making Plaintiff a citizen of Florida and destroying diversity jurisdiction.  [DE 135] at 2.  Seven days later, Plaintiff filed its motion to dismiss.  [DE 91].[1]

In light of this new information, and upon Defendant's request, I found that Defendant was entitled to limited jurisdictional discovery to corroborate whether Plaintiff was in fact a Florida citizen and whether the Court indeed lacked subject matter jurisdiction.  [DE 106].  At the conclusion of jurisdictional discovery, I reviewed the submitted evidence and agreed with Plaintiff that complete diversity did not exist and recommended granting Plaintiff's motion to dismiss.  [DE 135] at 9–10.  The Court then overruled Defendant's objections to the Report and Recommendation and adopted it in full, granting Plaintiff's motion to dismiss.  [DE 138].  Defendant now asks this Court, through its inherent powers and through 28 U.S.C. § 1927, to impose sanctions against Plaintiff and its counsel.  [DE 139].

## **<u>LEGAL STANDARD</u>**

A district court may address a motion seeking sanctions under the court's inherent powers or 28 U.S.C. § 1927 even if the court lacks jurisdiction over the underlying case.  *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).

Courts possess inherent powers that they may use to police those appearing before them.  *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to

---

[1] The Court denied Plaintiff's motion to dismiss without prejudice due its failure to comply with the requirements of Local Rule 7.1(a)(3).  [DE 92].  Plaintiff then refiled its motion to dismiss on January 9, 2024.  [DE 95].

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).  As part of their inherent powers, courts may assess attorneys' fees and costs against a party, counsel, or both when they act "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).  "[T]he party moving for sanctions must show *subjective* bad faith." *Hyde*, 962 F.3d at 1310.  This standard can only be met with direct evidence of subjective bad faith or conduct "so egregious that it could only be committed in bad faith."  *Purchasing Power*, 851 F.3d at 1224–25.

However, courts must exercise their inherent powers with restraint and discretion. *Chambers*, 501 U.S. at 44.  Exercising discretion means fashioning "an appropriate sanction for conduct which abuses the judicial process."  *Id.* at 44–45.  "The key to unlocking a court's inherent power is a finding of bad faith."  *Purchasing Power*, 851 F.3d at 1223.

Similar to a court's inherent powers, 28 U.S.C. § 1927 permits a court to require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" in any case where the attorney unreasonably and vexatiously multiplies the proceedings.  28 U.S.C. § 1927.  However, while invoking the court's inherent powers requires a showing of *subjective* bad faith, under § 1927, "the party moving for sanctions must show *objective* bad faith."  *Hyde*, 962 F.3d at 1310.  This means that the moving party must show that the attorney "knowingly or recklessly pursue[d] a frivolous claim or engage[d] in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."  *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

4

## ANALYSIS

Defendant has failed to demonstrate either subjective or objective bad faith by Plaintiff or its counsel.  Therefore, its Motion fails.  Defendant points to four circumstances that it believes show bad faith: (1) that Plaintiff knew it had merged into NPC LLC (and out of existence) two years before this litigation and had even sent Defendant a demand letter in the name of NPC LLC; (2) that, in response to the Court's order to confirm the membership and citizenship of any party that is an LLC, Plaintiff did not re-examine its own corporate structure and citizenship and continued to describe itself as an S corporation; (3) that Defendant's employees and officers testified they worked for Plaintiff, not an LLC; and (4) after Plaintiff's CFO alerted Plaintiff's counsel on November 13, 2023, that Plaintiff was really an LLC, Plaintiff's counsel did not alert Defendant or the Court until filing Plaintiff's motion to dismiss in early January 2024.  While Defendant infers that such circumstances inescapably indicate bad faith, a closer examination of the circumstances (particularly in light of Plaintiff's counsel's unrebutted declaration) more reasonably indicate that Plaintiff and its counsel were negligent.  And "negligent conduct, by itself, does not warrant sanctions under a court's inherent powers or § 1927." *Hyde*, 962 F.3d at 1311.

The most puzzling – and, for Defendant, most compelling – question is how Plaintiff could mis-identify itself in its own pleadings several years after merging into NCP LLC.  Plaintiff itself obviously knew about this merger.  And before filing suit, Plaintiff's counsel sent Defendant a demand letter in the name of NCP LLC not Plaintiff.  [DE 141–1] ¶ 2.  Therefore, Plaintiff's counsel must have at least been aware that NCP LLC existed.  Plaintiff's counsel's declaration states that at the time it sent the demand letter, it did not have in its possession substantial documents from Plaintiff or NCP LLC.  *Id.*  But Plaintiff's counsel does not explain why it did not notice the discrepancy between Plaintiff's name on the original contract and accounts receivable

statement and its client's name on the demand letter it had sent less than a month earlier.  In characterizing its actions as "a mistake," [DE 141] at 9, Plaintiff seemingly suggests that Plaintiff's counsel simply drafted the complaint using the name on the contract, either not noticing the discrepancy between Plaintiff's name and NCP LLC or not considering its import.  And Plaintiff's counsel then relied upon its client's review and approval of the draft complaint, with the client apparently either not realizing or not appreciating the significance of the discrepancy either.

Clearly, Plaintiff and its counsel made a significant and substantial error.  One expects a business to be keenly aware of its corporate form and its counsel to be keenly aware of the material difference between those forms.  While the difference between "Inc." and "LLC" may, to most people, be three letters tacked on the end of two otherwise identical names, a business's leaders and their attorneys would ordinarily note and appreciate the importance of the difference.  That especially goes for attorneys who are not simply inserting a name into a pleading but rather specifically alleging facts about that party's corporate form and citizenship.  As the party alleging subject matter jurisdiction (through diversity), the onus was on Plaintiff and its counsel to do its due diligence regarding both Defendant's citizenship and its own.  *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).  Plaintiff and its counsel failed in this endeavor, a failure in which they acknowledge.  *See* [DE 141] at 9.

However, as puzzling and troubling as this error was, Defendant has not demonstrated that it was done in bad faith.  Defendant has presented no specific evidence of dishonest intent.  Rather Defendant conjectures that Plaintiff knowingly hid the fact that it was an LLC as a failsafe, or "trapdoor," to escape this litigation if it did not pan out as Plaintiff hoped.  [DE 139] at 8–9.  But Defendant's conjecture makes little sense, particularly when Plaintiff's pleading error has wasted Plaintiff's time and resources seemingly as much as Defendant's and when a change of jurisdiction

6

offers Plaintiff no identifiable advantage.[2]  Rather Defendant leaps to the conclusion that Plaintiff's conduct must be the result of a nefarious plot (instead of a significant but innocent error) when the circumstances do not compel that inference.  In other words, Defendant has neither presented direct evidence of subjective bad faith nor conduct that could only be committed in bad faith.

In considering the likelihood that Plaintiff made a mistake instead of "hiding the ball" and purposefully laying a trap, it is worth noting that Defendant did not notice the discrepancy between Plaintiff and NCP LLC either.  Defendant had received the demand letter from NCP LLC. Moreover, since January 2020, Defendant has made payments to NCP LLC not Plaintiff, and, during that same time, Plaintiff emailed Defendant notifying it that Plaintiff has "gone through a restructuring so [its] company name has changed."  [DE 137–1]; [DE 141] at 10–11.[3]  Yet neither Defendant nor its counsel noticed the discrepancy or thought to inquire about it during discovery. To be clear, these facts do not mean Defendant is to blame for Plaintiff's jurisdictional pleading errors.  Plaintiff is.  Plaintiff was obviously in a supremely better position to know its own corporate structure and had the obligation of accurately alleging its own structure and citizenship. However, the fact that Defendant and its counsel could review the original contract and invoices with Plaintiff's name as well as other documents with NCP LLC on them and not notice or think

---

[2] Defendant cites the parties' dispute over a stipulation regarding how discovery from this case would be utilized in a subsequent case involving the same claims and from what procedural point such a case would commence as evidence that Plaintiff's "true intention" was to "push the reset button on this case" and gain a tactical advantage.  [DE 139] at 2; [DE 139–1]; [DE 139–2]. However, as Defendant's own Exhibit B [DE 139–2] illustrates, for the reasons explained in Plaintiff's Response [DE 141] at 15, Defendant's argument lacks merit.  Based on what the parties have presented, Plaintiff's position regarding how to approach a new case following dismissal of this one hardly amounts to "pressing the reset button" or "potentially re-open[ing] all the discovery that was already completed."  If anything, rather than evincing that Plaintiff had a "true intention" to "gain a tactical advantage," Defendant's argument illustrates Defendant stretching to see evidence of bad faith where none exists.

[3] Defendant does not contest this assertion, and Plaintiff states that Defendant has produced documents during the litigation which corroborate its assertions.  [DE 137] at 8.

to ask about the difference lends some credence to the idea that Plaintiff and Plaintiff's counsel could similarly overlook the issue innocently without nefarious intent.

Without assuming that Plaintiff intentionally hid its corporate status and citizenship from the start, Defendant's assertions that Plaintiff did not correct itself in response to the Court's order regarding the citizenship of LLCs and repeatedly represented itself as a corporation in subsequent filings adds little. While one could imagine the Court's order to show cause prompting Plaintiff's counsel to remember its prior identification of Plaintiff as an LLC, it is reasonable to infer that, having already made the mistake of identifying Plaintiff as a corporation, Plaintiff's counsel focused only on Defendant's citizenship in response to the order.

Defendant also asserts that six of Plaintiff's corporate employees and upper management "all testified under oath that they worked for Plaintiff NCP INC," [DE 139] at 5, suggesting that these employees continued the intentional deception throughout the case. If true, this would be stronger evidence of intentional conduct and bad faith. But Defendant only cites specific testimony from one such deposition – and that single statement from Plaintiff's corporate representative during his deposition is far from the smoking gun Plaintiff would like to have this Court believe.

During that deposition, Defendant's counsel asked that when he is "referring to National Tree today, . . . I do not have to say out the whole corporate name, we know what we are talking about?" [DE 96–1] at 6. The corporate representative responded in the affirmative. *Id.* This answer hardly shows the corporate representative (mis)representing that Plaintiff is a corporation, denying that Plaintiff is an LLC, or addressing Plaintiff's corporate form at all. Rather, the witness responded to a convoluted question from Defendant's counsel that itself did not even specify the corporate form. Thus, this answer sheds no light on whether Plaintiff was intentionally or even recklessly hiding its corporate form. And the fact that this vague, utterly un-probative statement

is the only example Defendant cited suggests that the other employees' depositions did not contain any more helpful examples.

Finally, Defendant points to the fact that Plaintiff's counsel learned from Plaintiff's CFO that Plaintiff was an LLC on November 13, 2023, but did not alert Defendant or the Court until filing Plaintiff's motion to dismiss in early January. However, this delay does not indicate bad faith. As Plaintiff's counsel's unrebutted declaration states, Plaintiff's counsel immediately began investigating NCP LLC's structure and citizenship. That investigation took place while the parties were scrambling to complete discovery, amidst several discovery disputes, a change in lead counsel, and the holiday season. Given the convoluted web of NPC LLC's ownership structure (which was well-illustrated during the parties' jurisdictional discovery), it is quite reasonable that it took Plaintiff's counsel six weeks to have a full picture of NPC LLC's citizenship. And it was similarly reasonable for Plaintiff's counsel to wait until he had a complete understanding of the facts before raising the issue with Defendant's counsel or the Court, especially given that the ramifications would be much different if NPC LLC had a member that was a Florida citizen compared to if it did not.

Two recent Eleventh Circuit Court opinions provide guidance on whether these circumstances amount to bad faith. First, in *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017), the Eleventh Circuit reversed a district court's decision to impose sanctions on a party. In *Purchasing Power*, the plaintiff sued the defendant in state court. *Id.* at 1221. The defendant sought to remove the case to federal court based on diversity. *Id.* But because the plaintiff was an LLC, the defendant's counsel asked plaintiff to confirm that none of the plaintiff's members were citizens of Minnesota or Delaware (states where the defendant was a citizen). *Id.* The plaintiff's counsel responded in an email that, based on conferring with his client,

the plaintiff was not a citizen of either state.  *Id.*  Later, during discovery, the defendant requested that the plaintiff produce documents relating to the plaintiff's members to ensure diversity.  *Id.*  The plaintiff objected that it could not obtain some of the requested information, and the information was irrelevant because plaintiff's counsel's earlier email regarding plaintiff's citizenship was sufficient for determining subject matter jurisdiction.  *Id.* at 1221–22.  Neither party nor the court inquired further into the matter.  *Id.* at 1222.

On appeal following the district court's grant of summary judgment to the defendant, the Eleventh Circuit noted that the pleadings did not sufficiently allege the plaintiff's citizenship.  *Id.*  Two years after removal, and after the parties conducted a more thorough investigation into the plaintiff's citizenship, the parties discovered there was no diversity jurisdiction.  *Id.*  The district court then sanctioned the plaintiff's attorneys under its inherent powers and Rule 26(g)(3) of the Federal Rules of Procedure for misrepresenting to opposing counsel and the court its client's citizenship on five separate occasions.  *Id.*

Back on appeal, the Eleventh Circuit reiterated the principle that a court may only sanction a party or its counsel under its inherent powers if the moving party can show subjective bad faith or, in the absence of direct evidence of subjective bad faith, through evidence that an "attorney's conduct is so egregious that it could only be committed in bad faith."  *Id.* at 1224–25.  The latter standard is "not the same as simple recklessness." *Id.* at 1225.  The Eleventh Circuit then examined the facts and found that both parties made avoidable mistakes.  The defendant, as the removing party, had the burden to confirm that diversity existed (which it did not), both parties made submissions to the district court that subject matter jurisdiction existed (or at the very least neither party raised the issue that it might not), and the plaintiff's counsel's investigation into its client's citizenship was lacking (but nevertheless occurred).  *Id.* 1226–27.  In the end, the Eleventh Circuit

found that "[n]o party in this case acted with bad intentions, but the result was a colossal waste of time and effort."  *Id.* at 1228.  And, instead of imposing sanctions, the Eleventh Circuit concluded that "the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants."  *Id.*

The second case, which neither party cites, is *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340 (11th Cir. 2024).  There, the plaintiff (who was a citizen of Delaware and Texas) filed suit against the defendant in federal court alleging diversity jurisdiction.  *Id.* at 1344.  Both parties maintained that the court had diversity jurisdiction, but the defendant's ownership structure (it was an LLC with multiple partnerships and LLCs as members) made it difficult to verify.  *Id.* While that lawsuit was proceeding, a judge in a separate federal lawsuit ordered the defendant to disclose all its members and their states of citizenship.  *Id.* at 1344–45.  The defendant conducted a thorough investigation and discovered it was a citizen of Delaware just like the plaintiffs in both the first and second lawsuit.  *Id.* at 1345.  The very next day, the defendant filed a motion to dismiss for lack of subject matter jurisdiction in the second lawsuit.  *Id.*

However, the defendant made no motion to dismiss in the first lawsuit nor took any other action to appraise the plaintiff or the court that there was no diversity, despite the defendant's knowledge that it shared the same citizenship as the plaintiff.  *Id.*  The defendant remained silent over the next 15 months, with the defendant actively participating and filing dispositive motions. *Id.*  The defendant remained silent through the court's consideration of cross-motions for summary judgment (on which the court rule against the defendant), the defendant's motion for reconsideration on that ruling, and a joint motion for a stay to give the parties a chance to mediate. *Id.*  Only after mediation failed and the court set a status conference did the defendant move to

11

dismiss the case based on lack of subject matter jurisdiction.  *Id.*  The plaintiff then moved for sanctions under the court's inherent powers, which the court granted.  *Id.* at 1345–46.

The Eleventh Circuit upheld the decision to impose sanctions and found that the defendant's actions were so egregious that it could only have been committed in bad faith.  *Id.* 1346.  The Eleventh Circuit highlighted the fact that the defendant discovered it was a citizen of Delaware fifteen months before bringing it to the plaintiff's or the court's attention, that the defendant's attorney surely understood the relevant law about diversity, and that the defendant only brought its motion to dismiss after several unfavorable rulings.  *Id.*

The facts here are more akin to the facts of *Purchasing Power* rather than *Oxford Mall*. First, Plaintiff did not sit on knowledge that it was a Florida citizen for fifteen months and wait for the Court to issue several unfavorable decisions to only then reveal its true corporate structure. Instead, based on Plaintiff's counsel's unrebutted declaration, Plaintiff and its counsel became aware of the mistake in November 2023 and spent one month investigating whether the mistake actually undermined subject matter jurisdiction.  [DE 141–1] ¶¶ 18–20.  Plaintiff promptly alerted the Court and Defendant once it discovered Plaintiff's Florida citizenship and moved to dismiss the case before either party moved for summary judgment.

Similar to the law firm in *Purchasing Power*, it seems that Plaintiff's counsel's initial investigation (after drafting the demand letter) into who the proper party was to commence suit was lacking.  Plaintiff's counsel trusted its client to review the Complaint and confirm that Plaintiff still existed and was the proper party.  This trust resulted in Plaintiff's counsel not conducting any further inquiries into the matter after drafting the Complaint until Plaintiff's CFO informed its counsel of the mistake.  Defendant, in turn, relied solely on Plaintiff's word that it was an S corporation instead of an LLC.  The Court, satisfied with Plaintiff's response (and lack of objection

from Defendant or evidence to the contrary) to its Order to Show Cause, [DE 6], proceeded as normal with the litigation.

To be sure, both *Purchasing Power* and *Oxford Mall* only considered sanctions awarded based on the court's inherent powers and its *subjective* bad faith standard, rather than § 1927's *objective* bad faith standard that includes "knowing or reckless" conduct.  Defendant has failed to demonstrate that Plaintiff's counsel vexatiously multiplied the proceedings through "knowing" conduct.  But whether Plaintiff's counsel acted recklessly is a closer question.  In this context, "recklessness" means "conduct that grossly deviates from reasonable conduct."  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007).  Again, the question comes down to Plaintiff's counsel's failure to investigate and confirm Plaintiff's corporate structure and citizenship, particularly in light of the fact that *someone* at the firm knew of NCP LLC at the time it sent the demand letter.  In hindsight, it is quite clear that someone should have caught this discrepancy and inquired further.  However, particularly given the dearth of evidence before me, I cannot say this failure – while serious and significant – amounted to recklessness.  In so finding, I am mindful that, even under a "reckless" standard, "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions," which the Eleventh Circuit has described as a "high standard."  *Id.* at 1242.

To the contrary, based on the record in this case and the submitted evidence (including Plaintiff's counsel unrebutted declaration), it is clear that this entire episode was a most unfortunate case of negligence.  And "negligent conduct, by itself, does not warrant sanctions under a court's inherent powers or § 1927."  *Hyde*, 962 F.3d at 1311.  Instead, as the Eleventh Circuit concluded in *Purchasing Power*, I recommend that the damage done to Plaintiff and its counsel's credibility,

finances, and time is an appropriate sanction to curb their conduct and to serve as a warning to them and future litigants.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion, [DE 139], be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 8th day of October 2024

Jared M. Strauss
United States Magistrate Judge