UNITED STATES COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-cv-60897-WPD

NATIONAL CHRISTMAS PRODUCTS,
INC. D/B/A NATIONAL TREE
COMPANY, a New Jersey Corporation

      Plaintiff,

v.

OJ COMMERCE, LLC, a Florida Limited
Liability Company

      Defendant.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE STRAUSS' REPORT AND RECOMMENDATION**

Plaintiff National Christmas Products, Inc. d/b/a National Tree Company ("NCP Inc." or "Plaintiff"), by and through undersigned counsel, opposes the Objection (the "Objection") to Magistrate Judge Strauss' Report and Recommendation, dated October 8, 2024 (the "Report"), filed by Defendant OJ Commerce, LLC's ("OJC" or "Defendant") on October 22, 2024.

## BACKGROUND

On January 4, 2024, Plaintiff moved to dismiss this Action (the "First Action") without prejudice on the grounds that the Court lacked subject matter jurisdiction. D.E. 91. On January 9, 2024, Plaintiff re-filed its motion to dismiss (the "Motion to Dismiss"), which included documentary proof concerning NCP Inc.'s[1] corporate identity and citizenship for diversity purposes. D.E. 95. Critically, Plaintiff set forth specifically-alleged facts, supported by

---

[1] Undefined capitalized terms shall have the same meaning as those set forth in the Report.

documentary evidence, that its complicated corporate structure as an LLC could be traced through layers of corporate LLC memberships and both domestic and international limited partnerships to an individual, Mark Hajduch ("Mr. Hajduch"), who was a citizen of Florida, thus destroying the diversity jurisdiction upon which the First Action rested.  That same day, OJC re-filed its expedited motion to amend the scheduling order and for expedited discovery on subject matter jurisdiction (the "Discovery Motion"). D.E. 96. On January 10, 2024, the Court stayed the First Action pending resolution of subject matter jurisdiction and referred both the Motion to Dismiss and the Discovery Motion to Magistrate Judge Strauss. D.E. 97.

On January 16, 2024, Plaintiff filed its opposition to the Discovery Motion (D.E. 100) and on January 18, 2024, OJC filed its reply (D.E. 101). On January 25, 2024, Magistrate Judge Strauss granted the motion in part, narrowing jurisdictional discovery to two questions: (1) whether Mr. Hajduch, at the time this action was filed, was in fact a citizen of Florida for diversity jurisdiction purposes, and (2) whether his citizenship, at the time this action was filed, had any bearing on Plaintiff's citizenship. D.E. 106.

On or around January 29, 2024, OJC served Plaintiff with Interrogatories and Requests for Production related to subject matter jurisdiction. Plaintiff provided its responses and objections to OJC's discovery requests on or around February 9, 2024, as well as 312 pages of responsive documents.

On February 22, 2024, Magistrate Judge Strauss held a discovery hearing to resolve OJC's issues with Plaintiff's production, and to discuss OJC's demand for multiple depositions, which were largely related to certain documents produced in redacted form. D.E. 108.  On February 23, 2024, Magistrate Judge Strauss issued an order (the "February 23 Order") granting in part and denying in part OJC's *ore tenus* motion to compel supplemental responses, production, and

depositions, specifically denying OJC's motion to compel production of unredacted documents and to compel certain un-noticed depositions. D.E. 112.

In the midst of the foregoing jurisdictional discovery, on February 27, 2024, Defendant filed *OJ Commerce, LLC v. National Christmas Products, LLC d/b/a National Tree Company, National Christmas Products, Inc. d/b/a National Tree Company, National Tree Intermediary, LLC, National Tree Holding, LLC, Joseph A. Puleo, Salvatore Puleo, Jr., and Richard Puleo*, Case No. 0:24-cv-60331 (the "Second Action"), which Defendant stated arose out of the same set of facts and circumstances, and the same commercial relationship, underlying the gravamen of the claims and counterclaims of the instant action.

On March 8, 2024, OJC filed an objection to the February 23 Order, seeking certain additional agreements in discovery D.E. 113. On April 1, 2024, that objection was denied on the grounds that Defendant failed to meet its burden of demonstrating that the February 23 Order was clearly erroneous or contrary to law. D.E. 129.

On April 2, 2024, OJC submitted its opposition to the Motion to Dismiss. D.E. 130. In opposition, Defendant argued—for the first time—that, pursuant to New Jersey law, and not withstanding the publicly-filed documentation that Plaintiff had merged into NCP LLC *and out of existence* in 2019, Plaintiff retained the capacity to sue and be sued in its corporate name. D.E. 130. Notably, Defendant failed to contest the validity of Plaintiff's merger into NCP LLC, or the fact that NCP LLC is a citizen of Florida for diversity purposes. On April 9, 2024, Plaintiff submitted its reply in further support of the Motion to Dismiss. D.E. 131.

On May 7, 2024, Magistrate Judge Strauss issued a report recommending granting Plaintiff's motion to dismiss for lack of subject matter jurisdiction on the basis that Plaintiff (1) adequately demonstrated that Plaintiff merged into NCP LLC and that NCP LLC is citizen of

Florida for the purpose of diversity jurisdiction, and (2) provided documentation sufficient to demonstrate the merger and how the citizenship of certain members of NCP LLC destroyed diversity (the "Dismissal Report"). D.E. 135. Defendant objected to the Dismissal Report. D.E. 136. This Court overruled Defendant's objection, adopted the Dismissal Report, and dismissed this Action on June 6, 2024. D.E.138.

On July 8, 2024, Defendant moved for sanctions against Plaintiff and Plaintiff's counsel (the "Sanctions Motion"). D.E. 139. Plaintiff opposed the Sanctions Motion on July 22, 2024. D.E. 141. Defendant filed its reply in support of the Sanctions Motion on July 28, 2024. D.E. 142. Magistrate Judge Strauss issued the Report which denied the Sanctions Motion on October 8, 2024 (the "Sanctions Report"). D.E. 143.

On September 30, 2024, the Court in the Second Action granted a motion to dismiss filed by the defendants in the Second Action (including NCP LLC). Second Action, D.E. 42. On October 4, 2024, OJC filed an amended complaint in the Second Action (the "Second Action Amended Complaint"). Second Action, D.E. 43.

In a last-ditch attempt to obtain sanctions, Defendant now baselessly objects to the Report. D.E. 144. Despite what OJC now claims as the basis for objecting to the Report, it has not and cannot show that Plaintiff acted in bad faith. As detailed below, Plaintiff opposes OJC's objection; the Sanctions Report should be adopted by this Court, and OJC's objection denied, in its entirety.

**ARGUMENT**

I. **Standard of Review**

Upon objection by a party, a district court may "accept, reject, or modify, in whole or in part" a magistrate judge's findings or recommendations. 28 U.S.C.A. § 636(b)(1). The Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P.

72(b)(3). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Andreasen v. Progressive Express Ins. Co.*, 276 F. Supp. 3d 1317, 1323 (S.D. Fla. 2017) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). If objections to portions of a report are not proper, they will be evaluated for clear error. *Id.* at 1323. Under all applicable legal standards, Defendant's objection is meritless and should be disregarded.

II.  **The Sanctions Report Correctly Determined that Sanctions Are Not Warranted**

   a.  **The Magistrate Judge Properly Relied on the Unrebutted Declaration of Plaintiff's Counsel**

In the Objection, Defendant argues that it was somehow improper for Magistrate Judge Strauss to rely on the declaration of Plaintiff's Counsel (the "Horgan Declaration") because Defendant was not able to obtain discovery related to Plaintiff's investigation. Objection at 7-10. This argument purposefully conflates two issues: (i) the jurisdictional discovery with respect to whether Plaintiff was a citizen of Florida for purposes of assessing the Court's subject-matter jurisdiction in the First Action, and (ii) the investigation into Plaintiff's citizenship undertaken by Plaintiff's Counsel prior to filing the Motion to Dismiss. Simply put, Defendant sought discovery related to the investigation by Plaintiff's Counsel solely in the context of the subject-matter jurisdiction question, where that discovery was irrelevant; Defendant never sought discovery on the investigation by Plaintiff's Counsel in the context of the Sanctions Motion.

Accordingly, Defendant's argument is a futile attack on the February 23 Order, and is meritless: Defendant was not improperly denied the ability to take discovery, nor has Defendant made any showing that discovery would uncover evidence that would rebut the Horgan Declaration. While Defendant is correct that Magistrate Judge Strauss denied Defendant's request to depose Plaintiff's counsel and Plaintiff concerning the investigation, Defendant fails to mention

that Defendant's request was made in its motion for *jurisdictional discovery* related solely to the question of whether or not subject-matter jurisdiction existed. At the time of that request, Defendant had not moved for sanctions or otherwise requested discovery related to a potential motion for sanctions; the specifics of counsel's investigation into subject matter jurisdiction—specifically, how and when counsel investigated the citizenship of the various entities in Plaintiff's corporate ownership chain—had no bearing on the *results* of the investigation, which is that Mr. Hajduch's Florida citizenship imputed Florida citizenship to Plaintiff, and thus destroyed subject-matter jurisdiction for the First Action (which was before the Court on the basis of diversity jurisdiction). Documentary evidence of Mr. Hajduch's citizenship, and how that citizenship carried through the chain of ownership entities leading to Plaintiff, was presented to Defendant and formed the basis of the Dismissal Report; in other words, at the time Defendant sought discovery from Plaintiff's Counsel, that discovery was irrelevant to the only issue *sub judice*, which was Plaintiff's citizenship for purposes of assessing subject-matter jurisdiction.[2] Notably, Defendant never moved for discovery related to the Sanctions Motion. As Defendant never properly requested such discovery (let alone making a showing for why it was needed, as the extensive documentation provided in the course of jurisdictional discovery demonstrates the complexity of the investigation undertaken by Plaintiff's Counsel), any objection to Magistrate Judge Strauss considering the Horgan Declaration in making the Sanctions Report is unfounded.

Defendant cites case law concerning the expansiveness of Rule 26 discovery while ignoring the law concerning jurisdictional discovery, which is the limited form of discovery Defendant specifically sought. Objection at 8. The law is clear that "[t]he right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.' . . . .

---

[2] This conclusion is supported by February 23 Order and this Court's April 1, 2024 denial of Defendant's objection to the February 23 Order.

Such discovery requests should not serve as fishing expeditions, and, as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017) (upholding District Court's denial of request for jurisdictional discovery where movant failed to specify "what information he sought or how that information would bolster his allegations."). Magistrate Judge Strauss correctly found (and this Court agreed) that the information Defendant sought in the Discovery Motion was overbroad in the context in which it was requested. Notably, Defendant did not actually challenge the portion of the February 23 Order concerning the denial of its request to depose Plaintiff's counsel or Plaintiff related to the investigations. While Defendant sought clarification of the February 23 Order and appealed it to this Court, Defendant failed to refer to (let alone challenge) the denial as related to the investigation. However, it is clear that even if Defendant did challenge that portion, those requests would have been denied: both this Court and Magistrate Strauss properly denied Defendant's motions on the grounds that Defendant was only entitled to limited jurisdictional discovery related to the Motion to Dismiss. Clearly, Defendant's request for discovery related to the investigation was properly denied.

Defendant next argues that *Itel Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc.*, 108 F.R.D. 96 (D.N.J. 1985) is somehow analogous. Objection at 8-10. This analogy is false: while the *Itel* Court did permit the plaintiff's request for discovery, it did so upon the plaintiff's cross-motion for sanctions, which was filed prior to dismissal of the Action. *Id.* Here, the Discovery Motion sought *jurisdictional discovery*, not sanctions or discovery related to any future sanctions motion. Additionally, counsel for the *Itel* defendant *admitted under oath* that counsel was aware of that the Court lacked subject matter jurisdiction from the outset of the case but proceeded through discovery, summary judgment, and pre-trial briefing before disclosing that fact. *Id.* Here,

Plaintiff's Counsel consistently has sworn that it was unaware of the defect until it concluded its investigation in December 2023, after which it promptly notified Defendant and the Court. Defendant has not pointed to, and cannot point to, any facts which would rebut Plaintiff's sworn statements. The *Itel* Court found that counsel's conduct involved more "than a simple non-disclosure . . . It was part of a plan and scheme to attenuate the proceedings." *Itel*, 108 F.R.D. at 103. Here, there is no evidence whatsoever which would suggest that Plaintiff's conduct here involved "a plan and scheme to attenuate the proceedings."

Significantly, Defendant does not actually dispute the facts in the Horgan Declaration. Rather, Defendant argues that it *believes* Plaintiff's actions were done in bad faith. Yet Defendant's allegations of bad faith are both conclusory and illogical. As Magistrate Judge Strauss properly found:

> Defendant has presented no specific evidence of dishonest intent. Rather Defendant conjectures that Plaintiff knowingly hid the fact that it was an LLC as a failsafe, or "trapdoor," to escape this litigation if it did not pan out as Plaintiff hoped. [DE 139] at 8–9. But Defendant's conjecture makes little sense, particularly when Plaintiff's pleading error has wasted Plaintiff's time and resources seemingly as much as Defendant's and when a change of jurisdiction offers Plaintiff no identifiable advantage. Rather Defendant leaps to the conclusion that Plaintiff's conduct must be the result of a nefarious plot (instead of a significant but innocent error) when the circumstances do not compel that inference.

Report, at 6-7.[3] Accordingly, Magistrate Judge Strauss properly considered the Horgan Declaration in issuing the Sanctions Order, and Defendant's objection thereto must be denied.

### b. The Magistrate Properly Applied the Relevant Case Law

---

[3] Defendant fails to address the Dismissal Report's finding that Defendant's own pre-litigation access to information—including the pre-suit demand letter in the name of NCP LLC and invoices in the name of NCP Inc.—indicates innocent error by Plaintiff's Counsel: "[that] Defendant and its counsel could review the original contract and invoices with Plaintiff's name as well as other documents with NCP LLC on them and not notice or think to ask about the difference lends some credence to the idea that Plaintiff and Plaintiff's counsel could similarly overlook the issue innocently without nefarious intent." Report at 7-8.

Next, Defendant argues that Magistrate Judge Strauss improperly concluded that the facts of this case were "more akin to the facts of *Purchasing Power* . . . than *Oxford Mall*." Objection at 10. Defendant's attempts to distinguish *Purchasing Power* are inapposite. Defendant seemingly argues that Plaintiff's conduct here evidences bad faith, unlike in *Purchasing Power,* because (i) Plaintiff's investigation took 52 days (rather than the one month taken in *Purchasing Power*), and (ii) Plaintiff supposedly was obligated to inform Defendant that NCP LLC was the proper party *before* Plaintiff's Counsel completed its investigation into Plaintiff's corporate citizenship. As the Sanctions Order found, both objections are baseless.

Crucially, Defendant leaves unaddressed a key aspect of the investigation by Plaintiff's Counsel: the merger of NCP Inc. into NCP LLC (and out of existence) was not the end of the inquiry, because NCP LLC's citizenship depended upon the citizenship of *each* LLC and partnership (general and limited) in NCP LLC's ownership chain. *See* D.E. No. 135 at 3. The conclusion that NCP LLC was the proper plaintiff for the First Action was only part of the analysis, and further investigation was required in order to determine whether—after substituting NCP LLC as plaintiff in the First Action—this Court would retain subject-matter jurisdiction. The Sanctions Report properly concluded that, given the stakes of the investigation and the complexity of NCP LLC's membership structure for citizenship purposes, *and* the fact that the investigation took place during the parties' rush to complete all outstanding discovery (including multiple depositions and several rounds of discovery requests), the 52 days Plaintiff's Counsel took to investigate the matter was reasonable. *See* Report at 9. Defendant does not dispute any of these facts.

Defendant next argues that *Oxford Mall* is analogous, while ignoring the actual facts of that case. Objection at 11-13. As Magistrate Strauss correctly explained, there was demonstrable (and publicly available) proof that the defendant in *Oxford Mall* knew that diversity did not exist

{01457223.DOCX.3}

for 15 months prior to informing Plaintiff or the Court. Report at 12. Here, Defendant argues that because Plaintiff itself knew it was an LLC and Plaintiff's Counsel sent the pre-suit Demand Letter in the name of NCP LLC, it must have known that NCP LLC was the proper plaintiff and that NCP LLC's corporate citizenship destroyed diversity jurisdiction. Yet, Defendant does not, and cannot, show that Plaintiff or Plaintiff's counsel was aware that NCP LLC would destroy diversity until the investigation was completed on December 28, 2023, or that that lack of awareness was the result of bad faith. Defendant does not show, and cannot show, that Plaintiff actively concealed this information: far from concealing the existence of NCP LLC, Plaintiff provided Defendant with documents sufficient to put Defendant on notice of NCP LLC's existence and relationship to the facts of the First Action; that Defendant also failed to connect the dots between NCP Inc., NCP LLC and the latter's corporate citizenship speaks to the *lack* of bad faith by Plaintiff and its counsel.  Clearly, Plaintiff was not actively concealing the existence of NCP LLC.

Defendant next argues that *Soliant Health* is analogous. Objection at 13-14. *Soliant Health* is also distinguishable: the defendant in that case *repeatedly* told the Court that it did not possess trade secrets, even after the Court warned that defendant would be sanctioned if that representation was false. *Soliant Health, LLC v. Aequor Healthcare Services, LLC,* 2024 WL 2158710 (N.D. Ga. 2024).  Additional distinguishing facts are that (i) the misrepresentation at issue concerned the actual merits of the claim, not the structure of the defendant entity for diversity purposes; (ii) the defendant expressly stated that it had actually investigated the matter before making the misrepresentations at issue, which the *Soliant Health* Court found damning because a "minimally adequately investigation should have revealed" the truth; and (iii) the defendant notified the plaintiff *but not the court* about its investigation and the results thereof, and in fact only notified the court of its investigation *after* the plaintiff moved for sanctions.  None of these factors is present

{01457223.DOCX.3}

in the First Action. Here, the investigation into whether or not Plaintiff's members included any Florida citizens required an extensive and complicated investigation as to the membership/partnership composition of a number of foreign and domestic LLCs and partnerships, as illustrated during jurisdictional discovery—not just the review of a few emails, as was the case in *Soliant Health*—and Plaintiff's Counsel promptly notified the Court of the investigation (and its result) mere days after concluding it. Magistrate Judge Strauss properly found that Plaintiff did not act in bad faith and denied the Sanctions Motion.

### c. Plaintiff's 52-Day Investigation Was Not Unreasonable

Defendant further objects to the Report on the grounds that Plaintiff's investigation took 52 days, which it believes is unreasonable given that the Order to Show[4] Cause demanded a response within six days. This is nonsensical: Defendant does not dispute that NCP LLC's ownership structure was complicated and required a lengthy investigation: indeed, Defendant spent two months conducting jurisdictional discovery concerning the ownership structure and sought to further extend that discovery. As the Report found, "[g]iven the convoluted web of NPC LLC's ownership structure (which was well-illustrated during the parties' jurisdictional discovery), it is quite reasonable that it took Plaintiff's counsel six weeks to have a full picture of NPC LLC's citizenship. And it was similarly reasonable for Plaintiff's counsel to wait until he had a complete understanding of the facts before raising the issue with Defendant's counsel or the Court, especially given that the ramifications would be much different if NPC LLC had a member that was a Florida citizen compared to if it did not." Report at 9.

### d. Plaintiff Did Not Gain Any Tactical Advantage as a Result of the Dismissal

---

[4] It should be noted that the Order to Show Cause referred to the Complaint's failure to adequately allege the citizenship of *Defendant*. As the Sanctions Report found, "it is reasonable to infer that, having already made the mistake of identifying Plaintiff as a corporation, Plaintiff's counsel focused only on Defendant's citizenship in response to the order." Report at 8.

Defendant next argues that the Order was erroneous because Plaintiff somehow gained a tactical advantage in the Motion to Dismiss. As Magistrate Judge Strauss correctly found, Defendant has not shown (and cannot show) that Plaintiff gained any advantage whatsoever. Report at 6-7. First, the dismissal was granted *without prejudice* such that Defendant can (and has indicated that it will) bring the same claims in a different forum. Second, to the extent that Defendant incurred expenses litigating this Action, Plaintiff incurred those same expenses. Additionally, Plaintiff has had to spend significant time and resources related to the numerous motions that Defendant has filed (including the Discovery Motion, the Sanctions Motions, and related challenges to each of those motions), jurisdictional discovery, and the defense of the Second Actions (which Defendant would have been precluded from bringing had the First Action not been dismissed).[5] As the dismissal was without prejudice, Plaintiff will *still* have to prosecute and defend against the same claims raised in the First Action. Defendant alleges that Plaintiff was somehow "on the verge of losing the vast majority of its damage claims on summary judgment." Objection at 17. In addition to being utterly conclusory, this allegation is knowingly false: Defendant had admitted in writing to owing more than 80% of the damages Plaintiff claimed in the First Action. Clearly, Plaintiff has obtained no tactical advantage here as would suggest any bad faith, as the Report properly found.

## CONCLUSION

OJC does not raise any valid objection to the Report: there is no evidence of bad faith by Plaintiff or its counsel, the investigation into Plaintiff's corporate citizenship by Plaintiff's Counsel was reasonable under the circumstances, and there was no impropriety with respect to the evidence

---

[5] If this Action had not been dismissed, the claims in the Second Action would have been compulsory counterclaims Defendant failed timely to raise, and would have been precluded under FRCP 13.

{01457223.DOCX.3}

Magistrate Judge Strauss considered in making the foregoing determinations. Magistrate Judge Strauss correctly found that that sanctions are not warranted. For the reasons set forth above, Plaintiff respectfully requests that the Court adopt Magistrate Judge Strauss' Report and Recommendation that Defendant's Motion for Sanctions be denied.

Date:   November 5, 2024

                                                            Respectfully submitted,

Black Srebnick
One Town Center, Suite 201
Boca Raton, Florida 33486
561-361-6800 Telephone
561-361-0062 Fax

   /s/ *Kyle A. Johnson, Esq.*
Kyle A. Johnson, Esq.
Florida Bar No.: 113324
KJohnson@RoyBlack.com
Lance W. Shinder, Esq.
Florida Bar No.: 851711
LShinder@RoyBlack.com


Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105

   /s/ *John B. Horgan Esq.*
John Horgan, Esq. (admitted pro hac vice)
jhorgan@egsllp.com
Joanna R. Cohen, Esq.
JCohen@egsllp.com
Aldonsa Janjigian, Esq. (admitted pro hac vice)
AJanjigian@egsllp.com

*Counsel for Plaintiff, National Christmas Products, Inc. D/B/A National Tree Company*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 5th day of November, 2024, I served the foregoing via electronic filing through this Court's CM/ECF system upon Shlomo Y. Hecht, Esq. and Aaron W. Davis, Esq., attorneys for Defendant, OJ Commerce, LLC, at sam@hechtlawpa.com; davis@valhallalegal.com.